Melvin **MAILLOUX** and Abigail Mailloux, **Robert R. Foley** and Mary J. Foley, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 19932.

United States Court of Appeals
Fifth Circuit.

July 8, 1963.

Leland E. Fiske, Dallas, Tex., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander,

Harry Marselli, Attys., Dept. of Justice, Crane Hauser, Chief Counsel, John M. Morawski, Atty., I. R. S., Washington, D. C., for respondent.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The petitioners bring to the Court for review a decision of the Tax Court finding income tax deficiencies against them. Joint returns had been filed. Only the husbands, Melvin Mailloux and Robert R. Foley, were participants in the transactions giving rise to the finding of tax liability, and they will be referred to as the taxpayers.

Critchell Parsons was the principal promoter of Rocky Mountain Uranium Corporation. It was incorporated on May 3, 1954. Transfers of uranium mining claims to the corporation were made or agreed upon in exchange for 1,450,000 shares of the stock of the corporation of the par value of ten cents per share, and the stock was issued on May 18, 1954. Of this stock, 900,000 shares were issued to Parsons. Each of the taxpayers received, on May 18, 1954, 120,000 shares of the stock by a transfer from Parsons out of the 900,000 shares which had been issued to him. The taxpayers were to receive ten per cent. of the proceeds of stock sales made prior to a public offering of the stock. The sales were to be at 50 cents a share. The taxpayers received $12,000 from this commission arrangement. The stock was transferred under an agreement that the taxpayers would make no sales without Parsons' approval. This restriction was to permit Parsons to prevent depressing the price by overselling the market. During 1954 Mailloux sold 23,650 shares and Foley sold 24,375 shares. These sales were made at various prices which averaged something over a dollar a share. In the latter part of 1954, some transactions and adjustments between Parsons and the taxpayers were made which resulted in his obtaining and retaining some of their stock certificates. Before the end of the year Parsons and the tax-

payers had a disagreement which arose from the failure, which Parsons attributed to the taxpayers, to procure approval from the Securities and Exchange Commission and the Texas Securities Commission of a public offering of the stock. Parsons directed the transfer agent not to make transfers of the taxpayers' certificates. They sued to establish their ownership. The litigation was compromised and settled in 1956. The taxpayers sold a part of their remaining stock in 1956 for ten cents a share and the rest in 1957 for five cents a share.

In their 1957 returns the taxpayers did not report any income on account of the receipt of the stock. The Commissioner made a determination that the stock was compensation for services, and that it had a value of fifty cents a share. A tax deficiency was proposed. The Tax Court, in a memorandum opinion, sustained the Commissioner.

Two questions are presented by the taxpayers' petition for review. The contention is made that the stock was received by the taxpayers in a tax-free exchange for property under 26 U.S.C.A. (I.R.C.1954) § 351. If there was no tax-free exchange and the stock was received for services, the taxpayers contend that it had no market value when received or, in the alternative, the value did not exceed ten cents a share, or at the most, an amount in excess of what they received for it.

Although the taxpayers claimed, and supported the claim with their testimony, that they had an interest in uranium claims which were conveyed to the corporation for shares of its stock, the testimony of Parsons is to the contrary. He testified that they had no interest in the claims. The Tax Court found against the taxpayers on this controverted fact issue, and its findings that the stock was for services and not for property are supported by evidence.

The Tax Court, in fixing the value of the stock, reviewed the sales made by the taxpayers, by Parsons, and by the corporation, and found that the stock,

at the time it was transferred to the taxpayers, had a value of not less than fifty cents a share. There was ample evidence before the Tax Court to sustain this finding of the value of the stock issued to the taxpayers unless, as the taxpayers assert, the effect of the restrictive agreement was such as to reduce the value of their stock to an amount less than fifty cents a share. The Tax Court concluded that such restrictions as may have existed had no bearing upon the fair market value of the stock at the time the taxpayers received it. Where a stock is of a highly speculative quality and the terms of a restrictive agreement make a sale impossible, it may be that no fair market value can be attributed to it. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755. But where there is no absolute prohibition against a sale, a restriction may reduce but does not destroy fair market value. Trinity Corporation v. Commissioner, 5th Cir., 1942, 127 F.2d 604, cert. den. 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524; Kirby v. Commissioner, 5th Cir., 1939, 102 F.2d 115; ABC Realty Co. v. Commissioner, 8th Cir., 1961, 295 F.2d 98; Goldwasser v. Commissioner, 47 B.T.A. 445, aff. Goldwasser v. Nunon, 2 Cir., 142 F.2d 556; Mertens, Law of Federal Income Taxation § 59.20.

We do not think it can be said that where the holder of a highly speculative stock—and speculative Rocky Mountain Uranium Corporation surely was—can carry it into the market place only at the indulgence of another, the fair market value of the stock is the same as it would be if the dominion of the holder was free and unfettered. Parsons prevented the taxpayers from selling a portion of their stock from December 1954 for nearly a year and a half. In December 1954 the national market for the stock was around $3 per share. When the taxpayers were able to sell they realized five and ten cents a share. The inability of the taxpayers to sell between December 1954 and May 1956 may not have been occasioned by the exercise of Parsons' right under the restrictive agreement, but the result would have been no more disastrous if the exercise of the right had been the cause of the inability to sell.

We think the Tax Court should have recognized the effect of impairing the market value of the stock and given effect to that impairment in the ascertainment of fair market value. To permit it to do so, its decision will be reversed and the cause remanded for further proceedings.

Reversed and remanded.