**BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA LOCAL UNION NO. 12-B, Affiliated with Bakery and Confectionery Workers International Union of America**

v.

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.**

Civ. A. No. 73-370.

United States District Court,
W. D. Pennsylvania.

Feb. 26, 1974.

---

Joseph J. Pass, Jr., Pittsburgh, Pa., for plaintiff.

Leonard L. Scheinholtz, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

SNYDER, District Judge.

Defendant has moved for Summary Judgment under Rule 56[1] of the Federal Rules of Civil Procedure and for the reasons set forth herein, the Motion will be granted.

The Union's Complaint claims monetary damages under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for *severance pay* on behalf of Joseph Ventrone, Business Agent of the Union, Michael Mastandrea, International Representative of the Union, and three female employees and members of the Union, Beatrice Rothwell, Clara Russmann and Dorothy Zamiske. It is admitted that there was a valid Collective Bargaining Agreement between the parties executed on May 3, 1970 and effective from May 4, 1970 until May 5, 1973.

Upon termination of the Pittsburgh Bakery operation, the Union brought an action in this Court (Civil Action 72–783) claiming monetary damages for termination of employment of its members caused by the closing of the Bakery. In that action it was claimed that the discontinuance of the Bakery violated a provision of the Agreement which guaranteed a scheduled work-week of five days (40 hours). Judge Gerald Weber granted the Defendant's Motion for Summary Judgment holding that the contract was *not* violated by the cessation of operations since there was no provision in the Contract that limited the right of the Defendant Company to discontinue operations at the Pittsburgh Bakery. (Bakery & Confectionery Workers v. Great A & P Tea Co., 357 F.Supp. 1322 (W.D.Pa.1973), affirmed 430 F.2d 721 (3rd Cir. Jan. 22, 1974)).

The Defendant asks that Summary Judgment be entered on its behalf in this proceeding because: (1) Section 301 of the Act did not confer jurisdiction on Federal Courts over the suit brought by the Union to enforce employee rights characterized as "uniquely personal"; (2) the subject individuals are not eligible for severance pay under the express language of the Agreement.

## I. HISTORY OF THE CASE.

We glean from the admissions in the pleadings and the affidavits filed that on and prior to October 8, 1972, The Great Atlantic and Pacific Tea Company, Inc. (A & P) owned and operated a bakery located in the City of Pittsburgh ("Pittsburgh Bakery") where A & P was engaged in the production and distribution of baked products to its stores located in Western Pennsylvania and certain parts of Eastern Ohio.

Employees of A & P at its Pittsburgh Bakery were represented for purposes of collective bargaining by the Plaintiff herein and the Collective Bargaining Agreement contained the following provisions with respect to severance pay:

"ARTICLE XVI—SEVERANCE PAY

(a) The Company agrees that it will not build a new bakery to produce the Pittsburgh production during the life of this Agreement.

*Section 1*—It is agreed that each full-time employee who is displaced from his employment by reason of the closing of an entire plant, a department thereof or the introduction of labor saving equipment, shall be compensated for such dis-

---

1. Rule 56(b) provides:

"*For Defending Party.* A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

placement providing he has been actively employed by the "Employer" for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of twenty (20) hours of severance pay (at his straight-time hourly rate of pay) for each full year of his actual employment, commencing with the fourth (4th) year thereof. Payment under this formula shall be limited to a maximum of nine-hundred (900) hours of severance pay.

*Section 2—*

(a) In the event an eligible employee wishes to remain on the plant seniority list, for the purpose of possible recall, he may elect to defer acceptance of his severance pay for a period of twelve (12) months. At any time during such period, however, he may request his severance pay and his right of recall and seniority shall terminate as of that date.

(b) If such employee has not been recalled by the end of such period, he shall be paid his severance pay and his right of recall and seniority shall terminate as of that date."

In addition, as part of the General Provisions of the Contract, it is set forth:

"ARTICLE XII—GENERAL"

"(h) 1. Any employee who may be elected President, Vice President, Financial Secretary, Treasurer or Business Agent of the Union may be granted a leave of absence without pay to coincide with the terms of office to which he is elected. During such leave of absence the employee will not accrue seniority but will retain the seniority he had accrued prior to the leave of absence.

2. Beginning with the next election the third Saturday in February, 1963, any employee who is elected to office with the local Union would accrue all seniority while he is in office for the purpose of job security only. In case of a lay-off, he would be governed the same as any other employee with the same seniority under Article VI, Section (c) of this Agreement. (This shall include the present Vice President Business Representative who is on leave of absence.)

3. Any employee who may be appointed or elected to an International Union Office or job, shall have the same rights as listed in Paragraph (h), Section 1. and 2."

The Pittsburgh Bakery closed on October 8, 1972. On January 5, 1973, the Plaintiff made a written demand for severance pay for the five aforementioned employees and the Defendant rejected this demand. Thereafter, on May 7, 1973, the Plaintiff filed this action on behalf of the five employees.

## II. THE COURT'S CONTESTED JURISDICTION OVER THE CLAIM ASSERTED BY THE PLAINTIFF.

The Defendant relying on Assn. of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510 (1955), contends that Section 301 of the Act does not confer jurisdiction on Federal Courts over a suit brought by the Union to enforce the claims set forth in the Complaint. The *Westinghouse* suit involved a claim by the Union for accrued wages which the employer refused to pay. Six Members of the Court held that Section 301 of the Act did not confer jurisdiction over such a suit on the Federal Courts. The basis for such a conclusion by three of the Judges was that:

"Such a task would involve the federal courts in multiplying problems

which could not be solved without disclosing that Congress never intended to raise them. Application of a body of federal common law would inevitably lead to one of the following incongruities: (1) conflict in federal and state court interpretations of collective bargaining agreements; (2) displacement of state law by federal law in state courts, not only in actions between union and employer but in all actions regarding collective bargaining agreements; or (3) exclusion of state court jurisdiction over these matters. It would also be necessary to work out a federal code governing the inter-relationship between the employee's rights and whatever rights were found to exist in the union. Moreover, if the general unfolding of such broad application of federal law were designed, the procedural objectives of Congress would have been accomplished without the need of any special jurisdictional statute. Federal rights would be in issue, and, under 28 U.S.C. § 1331 and Federal Rule 17(b), the suit could be brought in any district court by or against the union as an entity. The only effect of § 301 would then be to dispense with the requirement of amount in controversy and to adopt certain other minor procedural rules."

However, in Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), eight Members of the Court overruled the Assn. of Westinghouse Salaried Employees case with broad sweeping language (p. 199, 83 S. Ct. p. 269):

"However, subsequent decisions here have removed the underpinnings of Westinghouse and its holding is no longer authoritative as a precedent. Three of the Justices in that case were driven to their conclusion because in their view § 301 was procedural only, not substantive, and therefore grave constitutional questions would be raised if § 301 was held to extend to the controversy there involved. However, the same three Justices observed that if, contrary to their belief, "Congress has itself defined the law or authorized the federal courts to fashion the judicial rules governing this question, it would be self-defeating to limit the scope of the power of the federal courts to less than is necessary to accomplish this congressional aim." Id., [348 U.S.] at 442, [75 S.Ct. at 491] Textile Workers Union [of America] v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, of course, has long since settled that § 301 has substantive content and that Congress has directed the courts to formulate and apply federal law to suits for violation of collective bargaining contracts. There is no constitutional difficulty and § 301 is not to be given a narrow reading. Id., [353 U.S.] at 456, 457, [77 S.Ct. at 918, 1 L.Ed.2d 972]. Section 301 has been applied to suits to compel arbitration of such individual grievances as rates of pay, hours of work and wrongful discharge, Textile Workers Union' [of America] v. Lincoln Mills, [353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972,] supra; General Electric Co. v. Local 205, EUW, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; to recover wage increases in a contest over the validity of the collective bargaining contract, Charles Dowd Box Co. v. Courtney, [368 U.S. 502, 82 S.Ct. 519] 7 L.Ed.2d 483, supra; and to suits against individual union members for violation of a no-strike clause contained in a collective bargaining agreement. Atkinson v. Sinclair Refining Co., [370 U.S. 238, 82 S.Ct. 1318] 8 L.Ed.2d 462, supra.

The concept that all suits to vindicate individual employee rights arising from a collective bargaining con-

tract should be excluded from the coverage of § 301 has thus not survived. The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do.

The same considerations foreclose respondent's reading of § 301 to exclude all suits brought by employees instead of unions. The word "between," it suggests, refers to "suits," not "contracts," and therefore only suits between unions and employers are within the purview of § 301. According to this view, suits by employees for breach of a collective bargaining contract would not arise under § 301 and would be governed by state law, if not preempted by Garmon, as this one would be, whereas a suit by a union for the same breach of the same contract would be a § 301 suit ruled by federal law. Neither the language and structure of § 301 nor its legislative history requires or persuasively supports this restrictive interpretation, which would frustrate rather than serve the congressional policy expressed in that section. 'The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' [Local 174,]

Teamsters, C. W. & H. v. Lucas Flour Co., *supra*, (369 U.S. at 103 [, 82 S. Ct. at 577, 7 L.Ed.2d 593])."

■ The Defendant here contends that jurisdiction was not expanded under Section 301 by the Supreme Court in *Smith* to include *all* individual claims, but rather recognized that "uniquely personal" individual claims are "to a large degree inevitably intertwined with union interests" in view of the ongoing collective bargaining relationship between labor organizations and employers, and that the Federal interest in uniform administration of that relationship was served by determining such claims. The Defendant then contends that there is neither an interest of the Union, direct or indirect, or any Federal interest which could be served by enlarging Section 301 jurisdiction here to encompass the "uniquely personal" claims of the five former employees included within the present Plaintiff's Complaint. This, we believe, to be a misapplication of the language of the Supreme Court in *Smith* and we cannot agree with the Defendant's contention in this regard. See: International Ass'n of Mach. v. International Air. Serv., 302 F.2d 808 (4th Cir. 1962). There was certainly such an ongoing relationship that the Union had a legally cognizable interest in asserting the individual rights of the affected employees with respect to severance pay growing out of its Collective Bargaining Agreement. The Defendant's contention that this Court lacks jurisdiction must therefore be rejected.

### III. ELIGIBILITY OF THE EMPLOYEES FOR SEVERANCE PAY.

■ This Court notes that the Agreement expressly conditioned eligibility for severance pay, under Article XVI, Section 1(a), to "each full-time employee who is displaced from his employment by reason of the closing of an entire plant, . . . . shall be compensated for such displacement . . . . ."

Thus, we must determine if each particular individual was a full-time employee who was "displaced from his employment" at the Pittsburgh Bakery by reason of the closing of the entire plant. We find that none of the persons for whom the Union sues were so displaced.

Joseph Ventrone requested and received a leave of absence on February 15, 1966 to accept the position of Vice President of the Union and did not return to the Pittsburgh Bakery as a full-time employee prior to its closing on October 8, 1972. Similarly, Michael Mastandrea, Jr. requested and received a leave of absence from May 26, 1967 to accept the position of International Representative of the Union and did not return to the Pittsburgh Bakery as a full-time employee prior to its closing.

These leaves of absence were governed, in part, by Article XII–General, which provided that an employee elected to office would retain seniority while he is in office for the purpose of job security only and in case of lay-off "he would be governed the same as any other employee with the same seniority . . . ."

The Union contends with respect to these two former employees that they were full-time employees and, therefore, entitled to severance pay upon the closing of the Pittsburgh Bakery. Eligibility for severance pay requires not only that they be a full-time employee but that they be displaced from employment by reason of the discontinuance of the operation. Ventrone and Mastandrea were not displaced from their employment by reason of the closing. Thus, while they may have suffered a loss in the shutdown, the parties to the Agreement have excluded them from eligibility for severance pay in clear and unambiguous language.

The issue in regard to the employees Zemiska, Russmann and Rothwell is somewhat similar. Zemiska and Russmann were terminated in 1971; Rothwell was terminated in 1970. While each one of these employees filed an Affidavit that they had not been notified of their termination and their Affidavits were corroborated by the Representative of the Union, in that he had searched the records and found no such notice of termination (Counter Affidavits having been filed on behalf of the Company), there is not raised by such Affidavits a material question of fact which would affect the granting or refusal of the Motion for Summary Judgment. It is true that Article XII(a) of the Collective Bargaining Agreement provided:

> "The Company agrees to notify the Union each week of any hiring, lay-offs, terminations, quits, and the date such change occurred."

This is not made a condition of termination nor was any grievance filed by or on behalf of the affected employees contesting their termination.

Since the employment of Zemiska, Russmann and Rothwell was terminated in each case prior to the closing of the Pittsburgh Bakery, they were not full-time employees, nor did the closing displace them from their employment, and accordingly they are not entitled to severance pay.

Therefore, on the basis of the Pleadings, Affidavits, Briefs, and the Motion for Summary Judgment, there is no genuine issue of material fact for trial and the Defendant is entitled to Summary Judgment in its favor as a matter of law.

An appropriate order will be entered.