LOIS FECHTOR *vs.* SHELDON M. FECHTOR.

No. 87-1258.

Middlesex.    October 18, 1988. — February 14, 1989.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Divorce and Separation,* Division of property, Alimony. *Value. Evidence,* Value, Expert opinion. *Corporation,* Close corporation.

In a divorce action the judge's findings disclosed proper consideration of the factors set forth in G. L. c. 208, § 34, and supported his conclusion to make an approximately equal apportionment of the martial assets. [861-862]

In a divorce action there was no error in the judge's findings on the value of the parties' closely held securities business [862-865], and the improper exclusion of the husband's opinion of value was not reversible error [865-866].

A party in a divorce action who offered no evidence on the tax impact of the apportionment of marital assets raised no issue on that point for decision on appeal; however, any undue adverse tax consequences might be alleviated by a motion under Mass.R.Dom.Rel. 59 (e) to amend the judgment or a motion under Mass.R.Dom.Rel. 60 (b) to alter the judgment. [866-867]

No error appeared in a judge's award of rehabilitative alimony to the wife in a divorce action. [867-868]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on January 4, 1985.

The case was heard by *James M. Sweeney, J.*

*Anita W. Robboy* for Sheldon M. Fechtor.

*Thomas E. Lawton, Jr.* (*Monroe L. Inker* with him) for Lois Fechtor.

KASS, J. Of eleven orders comprising a divorce judgment nisi, the husband appeals from two: (1) payment to his wife of $250,000 over a period of two and a quarter years as part of an equitable distribution of marital assets; and (2) payment of "rehabilitative alimony" of $2,000 per month for three years.

Concerning the order to pay $250,000, the husband urges that
it rests on an exaggerated valuation assigned by the Probate
Court judge to a closely held business. He also says the judge
failed to factor income tax impact into the timing of the cash
payments. As to the alimony, the husband argues that the
record establishes no need for transitional alimony.

When Lois and Sheldon Fechtor married in 1963, she worked
as a legal secretary and he was nurturing an embryonic stock
brokerage business. From the start of their courtship, Lois
tended to the clerical and administrative side of Sheldon's
fledgling firm during her after-work hours. After the birth of
their first child, Lois dropped her secretarial job but continued
to run the office side of her husband's business. That business
prospered. It took on two other principals and the name Fechtor,
Detwiler & Co. The work force grew to approximately sixty
employees. In addition to being office manager, Lois became
a licensed stockbroker. Her earnings from Fechtor, Detwiler
reached $88,000 in 1984, the year she also ended her employ-
ment there and sold to the firm a small amount of stock which
she held in it. Her withdrawal from the firm coincided with
the disintegration of the Fechtor marriage. That same year,
1984, Sheldon's earnings from Fechtor, Detwiler exceeded
$300,000.

There were three children of the marriage, the youngest of
whom at the time of the divorce was sixteen. Two children
lived with their mother at the marital dwelling in Weston; one
child lived with her father. During their marriage, the Fechtors
had attained a prosperous life-style: domestic staff, vacations
in the sun and on the slopes, luxurious cars, and so forth.

The judge found the aggregate marital assets were
$2,154,460. His judgment included awards to the wife of the
Weston house (worth $546,000), property in Georgia (worth
$40,000), her 1983 Jaguar automobile, her interest in the profit
sharing plan at Fechtor, Detwiler, and various securities and
bank accounts. On the basis of the values assigned by the
judge, the assets which the wife was to take under the divorce
judgment came to $775,823. By way of additional division of
assets the judge, while leaving the husband in control of his

31.5% interest in Fechtor, Detwiler, ordered the husband to pay $250,000 in three installments: $75,000 within ninety days of the judgment; $75,000 within fifteen months of the judgment; and the balance within twenty-seven months of the judgment. Unpaid principal was to carry interest at ten percent, presumably to be part of the "balloon" payment at the end. The other major [1] and disputed order was for alimony of $2,000 per month for three years, subject to termination if either party should die, the wife remarries, or she should achieve "full time employment."

1. *The $250,000 payment.* Review of the judge's findings discloses conscientious consideration of those factors prescribed in G. L. c. 208, § 34. It remains to examine if the findings make apparent the reasons for the judge's conclusions and whether the judge's rulings are legally correct. See *Redding* v. *Redding*, 398 Mass. 102, 107-108 (1986); *Hanify* v. *Hanify*, 403 Mass. 184, 191 (1988); *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15 (1977); *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 817-818 (1985).

The judge's findings illuminate the active roles which the wife and the husband together played in their domestic and business lives. There is ample basis in the record for the judge's conclusion that the parties "were partners not only in their marriage but in their business life as well." Inclusive of the $250,000 in cash payments, the share of the marital assets awarded by the judge to the wife comes to 47.6%. Mathematical precision is not required of equitable division of property in any event, *Downing* v. *Downing*, 12 Mass. App. Ct. 968, 969 (1981), but considering the roughly equal[2] contribution here

---

[1] The judgment also requires the husband to pay $350 per week for the support of the couple's minor son. The son's minority will end in 1989, but the husband may then have responsibility for educational expenses. At all events, that category of obligations is not contested.

[2] No doubt the husband has possessed, and continues to possess, greater earning capacity because he spent most of his time with customers and trading securities while the wife did back room work. But the front room could not function without back room support. The wife played a particularly critical role during the start up of the brokerage business when she spared it, substantially if not entirely, the strain of an office payroll.

to the marital enterprise, the judge is hardly to be faulted about an apportionment close to 50%. Contrast *Savides* v. *Savides*, 400 Mass. 250, 251, 253 (1987) (substantial estate almost entirely a result of husband's efforts); *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 119-122 (1988) (husband made no significant contribution to marital estate and could be denied a share of the principal asset in it).

Although the cash transfer is sizeable, the judge left intact the husband's cash cow, his stake in Fechtor, Detwiler, and so the means for future accumulation of wealth. Not least of all, this might provide the source for the second and third installments on the $250,000 obligation.

2. *Valuation of the business interest.* There was conflicting expert testimony about the value of Sheldon's 31.5% interest in Fechtor, Detwiler. The judge found that interest to be worth $984,000, a conclusion which the husband attacks: generally, as unsupported by sufficiently detailed findings; and, more specifically, as employing clearly erroneous methods of valuation.

In arriving at a value $984,000 for Sheldon Fechtor's stock in his firm, the judge adopted an opinion testified to by Howard J. Gordon, an expert witness called on behalf of Lois Fechtor. Gordon was in charge of the corporate valuation department of an investment banking firm. His approach to appraising the fair market value of Sheldon's 31.5% holding was to apply a multiplier of two to the net worth of the company,[3] multiply by 31.5% (Sheldon's interest) and then discount the resulting figure by 15% to reflect the lesser marketability of a minority interest in a closely held corporation.[4]

---

[3] Fechtor, Detwiler had acquired a brokerage firm, Spencer, Swain and Company, Inc., in the last quarter of 1986. Gordon indicated that the net worth depended on whether the acquisition of Spencer, Swain was characterized as a purchase of assets and liabilities or as a purchase of stock. If the acquisition were a stock purchase, the net worth would be higher, and Sheldon Fechtor's interest would come out as $1,080,000. The judge opted for the lower value.

[4] The computation was: net worth of $1,838,117 × 2 = $3,676,234 × 31.5% (Sheldon Fechtor's interest) = $1,158,014 − $173,702 (15% discount for limited marketability) = $984,312.

The husband's expert, William I. Carmen, an accountant, simply applied Sheldon's percentage interest to the company's net worth and discounted, conservatively, 20% for minority position and 30% for the closely held nature and restricted transferability of the stock. At trial the judge expressed skepticism: "You're telling me the fair market value is the book value in your opinion, right?" In his findings, the judge touched on why he favored Gordon's method of valuation. A multiplier was warranted, the judge found, because the principals of a broker-dealer operation of this size typically draw out earnings. The difficulty with Carmen's approach, the judge noted, is that it failed to account for earnings taken out and an impressive growth in trading volume. Going concern value was disregarded.

Having explained why he preferred Gordon's opinion of value to Carmen's, the judge was not bound to parrot the details of Gordon's valuation report. We are, therefore, unimpressed by the husband's contention that the judge's findings on value are not specific enough.

The judge was, of course, free to reject the opinion of the husband's expert and the valuation methods on which it was based. *Ruschetti's Case*, 299 Mass. 426, 430-431 (1938). *Foxboro Assoc.* v. *Assessors of Foxborough*, 385 Mass. 679, 683 (1982). Faced with a battle of experts, the fact finder may accept one reasonable opinion and reject the other. *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 639 (1985). Or the judge may reject expert opinion altogether and arrive at a valuation on other evidence. *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 714 (1985). *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 550 (1986). Unless clearly erroneous, the trial judge's determination of value will stand. *Ibid.* Contrast *Caldwell* v. *Caldwell*, 17 Mass. App. Ct. 1032, 1033-1034 (1984), in which double counting and assigning of value to property declared worthless manifestly distorted a valuation decision.

Had the wife's expert and, by derivation, the judge failed to take any notice of the encumbered marketability of a minority block of stock in a closely held corporation, that might have

been the sort of fundamental — hence clear — error which would require rejection of a valuation. Such was not here the case. Both experts recognized that a percentage discount factor needed to be applied to account for encumbrances on the marketability of the stock. The question for the judge was the size of that discount and the judge may adopt a discount factor which, on the basis of the evidence, is within the range which a knowledgeable appraiser of the sort of business in question may apply. The husband criticizes particularly the failure to reflect adequately the depressing effect of transfer restrictions imposed on the Fechtor, Detwiler stock. Stock restrictions which grant to other stockholders in a closely held corporation an option to buy at a predetermined price may, obviously, limit what is actually paid. See *Partridge* v. *Partridge*, 14 Mass. App. Ct. 918, 920 (1982).

There was evidence that Fechtor, Detwiler stock was subject to a transfer restriction which gave the corporation a first option to buy at book value the shares of a stockholder who desired to sell. The details of that restriction were not explored in the testimony.[5] It is hardly inevitable that the corporation would buy in the stock of one of its major shareholders. The attraction of an equity position in a relatively small service company such as Fechtor, Detwiler would be to secure an operating base in the securities business from which the major stockholder could earn substantial salaries and bonuses, as historically the principals in Fechtor, Detwiler appear to have done. While the transfer restriction was a significant factor in appraising the market value of the stock, it was not an absolutely limiting one. See *Mailloux* v. *Commissioner*, 320 F.2d 60, 62 (5th Cir. 1963); *United States* v. *Parker*, 376 F.2d 402, 409-410 (5th Cir. 1967); Rev. Rul. 59-60, § 8, 1959-1 C.B. 237. Otherwise, as the judge noted, there was no point in the experts' engaging in their respective detailed financial analyses. Confronted with

_____

[5] The restrictions which governed the transfer of Lois Fechtor's fifty shares are set forth in an exhibit, but it is not clear that the principals in Fechtor, Detwiler were subject to the same restrictions, although a postjudgment motion to amend findings of fact filed on behalf of the husband suggests that they were.

a difference of opinion about the size of the discount to be applied to recognize the stock transfer restriction, the judge was entitled to make a reasoned choice. The important thing was that the restriction be taken into account adequately after suitable analysis.

Cases to which the husband's brief has referred are consistent with this view. In *Rogers* v. *Rogers*, 296 N.W.2d 849, 852-853 (Minn. 1980), for example, the error lay in reliance upon an opinion of value which recognized no discount at all by reason of a stockholder's agreement which restricted transfer. *Amodio* v. *Amodio*, 70 N.Y.2d 5, 7-8 (1987), similarly involved a failure by expert witnesses to discount for limitations on transferability. Compare also *Scalchunes* v. *Scalchunes*, 134 A.D.2d 337, 338 (N.Y. 1987).

Sheldon Fechtor offered to give his opinion of the value of his interest in Fechtor, Detwiler, but his opinion and reasons were excluded by the judge. Fechtor had been in the securities business about twenty years and on a quite recent occasion had presided over the acquisition of a small securities broker-dealer firm. He was obviously competent to testify by reason of his experience and the knowledge acquired through ownership of his interest in the business. Excluding Sheldon Fechtor's opinion of value was error. *Menici* v. *Orton Crane & Shovel Co.*, 285 Mass. 499, 503 (1934). *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951). *Blais-Porter, Inc.* v. *Simboli*, 402 Mass. 269, 272-273 (1988). *von Henneberg* v. *Generazio*, 403 Mass. 519, 524 (1988). *City Welding & Mfg. Co.* v. *Gidley-Eschenheimer Corp.*, 16 Mass. App. Ct. 372, 375 (1983). See Liacos, Massachusetts Evidence 118-119 (5th ed. 1981). The error, however, did not rise to the level of a reversible one. An offer of proof discloses that Sheldon's proposed testimony lined up with that of his expert, Carmen. The judge rejected the book value method used by Carmen, and it is hardly likely that testimony to the same effect by a party would have altered his view.[6] Contrast *Clapp* v. *Haynes*, 11 Mass. App. Ct. 895,

---

[6] The offer of proof of what the husband would testify made no mention of the effect of the stock transfer restrictions, suggesting he regarded them as of minor importance.

897 (1980), in which the rejected testimony of a founder, president, and general manager appears to have been the only evidence about the value of converted property.

3. *Tax considerations.* In ordering an apportionment of marital assets, a court should consider and should minimize adverse tax consequences. *Sheskey* v. *Sheskey*, 16 Mass. App. Ct. 159, 162 (1983). *Robbins* v. *Robbins*, 16 Mass. App. Ct. 576, 579 (1983). The husband argues that the order to pay $250,000 would, as a practical matter, require sale of his Fechtor, Detwiler stock and create a $180,000 tax liability, a cost with which the probate judge failed altogether to contend.

Such a serious and tax-costly liquidation was far from ordained by the husband's circumstances. The $250,000 obligation was spread in installments over twenty-seven months, presumably in part to avoid so drastic a consequence. Sheldon owned other assets: a ski lodge, investment partnerships, securities, and an interest in a profit sharing plan. These might be liquidated in part or used as collateral for loans. In 1984, as the judge found, the husband's income had been around $300,000. There was reason to anticipate that a sizeable portion of the cash transfer to the wife could come from earnings.

To be sure it is preferable for a Probate Court judge making an equitable distribution of a marital estate to calculate the tax impact of liquidating assets, but the judge received insufficient assistance in that regard. No evidence was offered about the basis of the husband's non-business assets and what the tax impact of liquidating at current market values would be. The judge was left to divine both the taxable income generated by the sale of much of the husband's property and the applicable tax rate. If parties do not request the judge to consider particular tax consequences and do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues. *Bennett* v. *Bennett*, 15 Mass. App. Ct. 999, 1000 (1983). See also *Rice* v. *Rice*, 372 Mass. 398, 402 n.4 (1977); *Angelone* v. *Angelone*, 9 Mass. App. Ct. 728, 732 (1980); *Wolfe* v. *Wolfe*, 21 Mass. App. Ct. 254, 258 n.7 (1985).

If parties to a divorce are reluctant, before the judge formulates an order for division of marital assets, to analyze tax consequences of an award which they prefer, at a prejudgment stage, to think of as unthinkable, that inhibition does not deter the filing of a postjudgment motion under Mass.R.Dom.Rel. 59(e) (1975), supported by citations to tax law and regulations and by illustrative calculations, to amend the judgment so as to alleviate undue adverse tax consequences.[7] Indeed, if in the time elapsed during the pendency of this appeal economic facts have developed which demonstrate that adverse tax consequences can be avoided by modifications in the payment schedule of the $250,000 not materially detrimental to the wife, the husband may move under Mass.R.Dom.Rel. 60(b) (1975) to alter the judgment to alleviate unnecessarily burdensome tax costs.

4. *Alimony.* The husband argues that the "rehabilitative alimony" of $2,000 per month is inconsistent with the picture of the wife as a knowledgeable, experienced businesswoman. Her work experience during the last twenty years, however, had been with her husband, and she lacks formal credentials. To reach the level of earnings she had achieved at Fechtor, Detwiler in 1984 ($88,000) may take some time. The judge could take this into account. Awarding alimony is invested with considerable discretion. *Bianco* v. *Bianco,* 371 Mass. 420, 423 (1976). *Drapek* v. *Drapek,* 399 Mass. 240, 243 (1987). *Harris* v. *Harris, post* 1004 (1988). The alimony order made is within the range of analogous awards in *Mailer* v. *Mailer,* 390 Mass. 371, 375 (1983), and *Drapek* v. *Drapek, supra* at 248.

The phrase in the order limiting alimony until the wife secures "full time employment" does not fail for lack of definite-

---

[7] Of course, when significant property is involved, each party has a pretty good idea what the other is asking for, and counsel are well advised to provide the judge with analysis of the tax consequences of the other party's demand. When tax consequences seem likely to present significant problems, the judge can perhaps deal with them by issuing a tentative order submitted to counsel in advance of judgment for criticism and suggestions. Although the parties are often hostile, the tax collector may remain a common enemy.

ness. Full time employment is a phrase courts have been able to interpret in context. See *Morris's Case*, 354 Mass. 420, 426 (1968); *Bakery & Confectionery Wkrs. Intl. Union* v. *Great Atl. & Pac. Tea Co.*, 371 F. Supp. 1120, 1124-1125 (W.D. Pa.), affd., 506 F.2d 1050 (3d Cir. 1974); *Metzgar* v. *Summit County Childrens Servs. Bd.*, 8 Ohio App. 3d 168, 169 (1982); *Bakkensen* v. *John Hancock Mut. Life Ins. Co.*, 222 Or. 484, 489-492 (1960). Compare *Yee* v. *Yee*, 23 Mass. App. Ct. 483, 484-486 (1987), in which "no longer desirous or capable" was held to be an insufficiently definite standard for disposition of a major marital asset.

*Judgment affirmed.*