Burnes, J.
Introduction
This matter concerns a dispute between certain present or former stockholders of a cooperative housing corporation and the corporation’s Board of Directors (the “Board”) over the legality and enforceability of certain actions taken by the Board. The plaintiffs, Robert S. Kargman, as Trustee of TVI Realty Trust, John J. Nicoli, Eric L. Harrington, Barbara A. Cappadona, Dianne M. Colachico-Walters and Michael J. Mullen (the “Plaintiffs”), have moved for summary judgment on Count I of the First Amended Verified Complaint. Count I seeks a declaration that the action by the Board of First Patriot Corporation allegedly restricting the transfer of stock in certain ways is not valid and that the corporate and individual defendants, David M. Rosenberg, Niki Bronstein, Mary Appugliese, Mark Buccolo, Rhonda Ziner and Eric Richman (collectively, the “Individual Defendants”), who are officers and directors of the Board of the corporate defendant, First Patriot Corporation, recognize the sales of certain units to plaintiff Kargman. The corporate and Individual Defendants oppose the motion on substantive and procedural grounds. For the reasons set forth in this opinion, the court grants the motion for summary judgment on Count I.
DISCUSSION
a. Facts
For purposes of this motion, the following material facts are undisputed:
First Patriot Corporation (“First Patriot”) is a Massachusetts corporation which owns a 420-unit cooperative housing complex in Burlington known as “Beacon Village.” In this cooperative, shares are allocated by the Board to a particular apartment in Beacon Village in an amount determined by the Board to bear a reasonable relationship to the proportion of the value of First Patriot’s equity in Beacon Village attributable to the apartment to which shares of stocks are allocated. Each stockholder is given the exclusive right, appurtenant to his or her stock, to occupy and or lease the apartment at Beacon Village which is related to the stock held by that stockholder. Many owners at Beacon Village lease their apartments to their own tenants.
First Patriot was incorporated as of November 9, 1983, under M.G.L.c. 156B. The articles of incorporation contain a restriction on issuance and transfer of stock. That restriction relates to the quantity of shares that are allocated to a particular apartment, the purchaser’s of the block of shares executing a form of lease, and the purchaser’s of the shares being an actual person. None of these restrictions are at issue in this case.
The bylaws of First Patriot contain three provisions pertinent to this decision:
ARTICLE XXIII
Capital Stock
The Board of Directors shall have the sole authority to issue, or reserve for issue from time to time, the whole or any part of the capital stock which may be authorized from time to time, to such persons or organizations, for such consideration, whether cash, property, services or expenses, and on such terms as the Board of Directors may determine.
ARTICLE XXVI
Restrictions on Transfer
The transfer of shares of the capital stock of the corporation is subject to those restrictions set forth in Article XXIII herein above and in the Articles of Organization of the corporation.
ARTICLE XXV
Transfer of Shares of Stock
Subject to restrictions on transfer, if any, imposed by the articles of organization or these bylaws, . . .
By Chapter 574 of the Acts of 1983 (“Chapter 574”), approved December 15, 1983, the Legislature enacted *442 c. 157B of the General Laws. The chapter is captioned “Cooperative Housing Corporations.” It applies to all cooperative corporations organized under it. M.G.L.c. 157B, §2. Chapter 574 also repealed M.G.L.c. 157, §3A. That section had provided for the formation of a cooperative corporation to conduct housing business on the cooperative plan. M.G.L.c. 157, §3A (repealed by Chapter 574). Nevertheless, Chapter 574 provided that corporations which had previously been organized under that section would continue to exist. M.G.L.c. 157B, §2 also provided that a corporation organized under another chapter of the General Laws could become a cooperative corporation by amending its articles and “electing to become subject to this chapter ...” Section 2 of c. 157B further provided that “the amendment must be adopted and filed, and shall be effective, according to the chapter under which the corporation was organized before acceptance of this chapter.” M.G.L.c. 157B, §2.
First Patriot never amended its articles as provided in c. 157B, §2. There has been one amendment to the articles subsequent to the passage of c. 157B, but that amendment, in 1988, was made pursuant to c. 156B, §72.
On March 24, 1997, the Board of First Patriot voted unanimously, as follows:
For the foreseeable future, all transfer of stock must be limited for residential purposes only to individuals and their immediate family. No shares are to be transferred to investors and must be in accordance with the articles of incorporation, bylaws and the statutes of the commonwealth.
There has never been a vote of the shareholders that would limit transfer of stock as described above.
B. Stock Transfer Provision
It is apparent from this recitation of the facts that First Patriot is subject only to the provisions of c. 156B. First, it. was incorporated under that chapter. Second, the corporation has never sought to have its articles of incorporation amended so to bring it under c. 157B. Chapter 157B governs only those corporations which are organized under it. M.G.L.c. 157B, §2.
The defendants say that First Patriot pre-existed the passage of c. 157B as a cooperative housing corporation and, therefore, it is governed by c. 157B. The Articles of Organization recite as one of the purposes of the corporation to acquire and operate the property known as Beacon Village as a cooperative apartment complex. That is not the same thing as being solely a cooperative housing corporation. It is unclear whether First Patriot would ever qualify as a c. 157B organization. What is clear, however, is that First Patriot had to take certain steps to bring itself under the provisions of c. 157B and it has not done so. As discussed above, First Patriot was incorporated under c. 156B and remains a corporation organized under that chapter and subject to its requirements.
Under §§70 and 71 of c. 156B, all restrictions on transfer of stock which are implemented after the establishment of the corporation must be approved by a vote of two-thirds of the stockholders. This, of course, makes perfect sense, since the economic value and rights and obligations of the shareholders will be affected by the imposition of any restrictions imposed on their ability to transfer their stock.
The defendants do not appear to argue seriously that the Board vote of March 24, 1997 is not a restriction on transfer of stock as that concept is ordinarily understood in corporate law and, indeed, it would be difficult to make that argument with a straight face. The Board even referred in its vote to “transfer of stock.” Furthermore, it is just the type of control which the Board attempted to impose which corporations typically impose to retain control of the corporation. See Colbert v. Hennessey, 351 Mass. 131, 140-41 (1966) (Holmes, C.J., anticipated that corporations would want stock restrictions “to retain!] the right to choose one’s associates . . .”). See also, e.g., Durkee v. Durkee Mower, Inc., 384 Mass. 628, 630 (1981) (transfer restriction required stock to be offered back to corporation before it could be sold); Fechtor v. Fechtor, 26 Mass.App.Ct. 859, 864 (1989) (transfer restriction gave the corporation an option to buy stock back at book value); Partridge v. Partridge, 14 Mass.App.Ct. 918, 920 (1982) (transfer restriction gave an option to existing stockholders to buy at a predetermined price).
What the defendants do argue is that the act of the Board in March, 1997, simply establishes “standards for eligibility" under M.G.L.c. 157B, §10(g). That section allows a cooperative housing corporation incorporated under c. 157B to provide in its articles or bylaws standards for eligibility to become a stockholder. The short answer to this question is that First Patriot is not incorporated under c. 157B and, therefore, this provision does not apply to it.[4]
C. Procedural Issues
The defendants have also opposed the plaintiffs’ motion for summary judgment on two procedural bases. First, they say the court should not decide this issue because it would not end the controversy between the parties. This, say the defendants, is a requirement under the Declaratory Judgement Act, M.G.L.c. 231A, §3. However, the court may, and does here, declare the rights of the parties as to an issue in the case, where such a declaration will end the controversy between the parties on that issue. See Oxford v. Oxford Water Co., 391 Mass. 581, 585 (1984) (the purpose of declaratory judgment is to “enable the parties to deal intelligently with the situation before them, to agree between themselves as far as possible, and to reduce as much as possible the area of future litigation” (citation omitted).
Second, the defendants argue that the plaintiffs’ summary judgment materials are not properly presented by affidavit. Quite frankly, one might make the *443 same comment about the defendants’ opposing materials. While the court does not condone such practices, it is apparent on the undisputed corporate documents that the facts are those as stated above and the court does not need to use other facts that may be unauthenticated for its opinion.
ORDER
For the reasons stated in this opinion, the court grants summary judgment to the plaintiffs on Count I of the First Amended Verified Complaint and declares that the vote of the Board of Directors of First Patriot Corporation on March 14, 1997, established a restriction on the transfer of the stock of the corporation and, as such, was unauthorized, is invalid, and is of no legal effect.

 It is beyond the scope of, and not necessary to, this opinion to determine whether a cooperative housing corporation could change the standards of eligibility after issuance of the stock if to do so was, in essence, to restrict the transfer of that stock, without a % vote of the shareholders. It may be that such a change would bring that action under the aegis of c. 156B, §§70 and 71.