NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-160

HYEJIN KWAK

vs.

SETH H. BOZARTH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal stems from divorce proceedings in the Probate and Family Court between Hyejin Kwak (wife) and Seth H. Bozarth (husband).  The wife, a prosthodontist, is the sole owner and shareholder of a dental practice (the practice or business). The parties stipulated that the husband would receive as part of the property division an amount equivalent to twenty-five percent of the June 2017 fair market value of the dental practice, with the value to be determined by the trial judge. At trial, two opinions of value were presented to the judge: (1) the wife's own opinion that the practice was worth $662,452; and (2) the opinion of the husband's qualified business valuation expert, David E. Consigli, Jr., who opined that the practice was worth approximately $2,230,000.  The judge ultimately rejected the wife's valuation, largely credited

Consigli's valuation (with one exception), and concluded that the dental practice was worth $2,074,000 (thus entitling the husband to $518,500, pursuant to the parties' pretrial agreement).  The wife appeals from the April 29, 2021 supplemental judgment of divorce nisi (divorce judgment),[1] asserting that the judge erroneously overvalued the dental practice.  We affirm.

Discussion.  "Valuation of a business interest is a question of fact," and we will not disturb the judge's findings of fact unless they are clearly erroneous.[2]  Adams v. Adams, 459 Mass. 361, 380 (2011).  "When the opinions of valuation experts diverge, a judge may 'accept one reasonable opinion and reject the other.'"  Adams, supra, quoting Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 863 (1989).  The judge may also "arrive at a valuation on other evidence."  Adams, supra at 381, quoting Fechtor, supra.

---

[1] The wife also appeals from orders dated April 29, 2021, denying her separate motions to amend the divorce judgment and findings of fact.  The wife, however, makes no separate argument in her brief on those motions and we need not address them.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief").

[2] "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotations and citations omitted).  Kendall v. Selvaggio, 413 Mass. 619, 620-621 (1992).

2

Here, the judge rejected the wife's valuation of $662,452, finding that her methodology (which involved subtracting the business's debt from sixty percent of its average gross receipts) was not a "recognized business valuation method." By contrast, the judge found Consigli's use of the income approach (which involved a capitalization of earnings methodology dividing the business's normalized cash flow by the risk-adjusted rate of return) to be generally appropriate. See Adams, 459 Mass. at 381. Consigli used data from three years (2015, 2016, and 2017) to determine the business's future cash flow, first determining the cash flow for each individual year and then averaging that cash flow over a three-year period. However, in averaging the cash flow over three years, Consigli assigned the most weight to 2017, as he believed it was the best predictor of the practice's future performance.[3] The judge credited Consigli's methodology and accepted all but one of the input values used by him in determining the business's cash flow and ultimate value. Among the input values accepted by the judge were officer salary normalization adjustments for 2015 and 2016; however, the judge rejected the salary normalization adjustment for 2017. The judge also credited Consigli's

_____

[3] The judge credited this testimony, which was consistent with the wife's testimony that revenues had plateaued by the time of trial.

3

application of a twenty-one percent good will discount, reflecting the estimated loss of clients that would occur if the wife left the practice.

On appeal, the wife does not challenge the judge's general acceptance of Consigli's capitalization of earnings methodology. Instead, she contends that the judge erred (1) in her treatment of the salary normalization adjustments, and (2) in crediting Consigli's "randomly pegged" twenty-one percent good will discount, resulting in an impermissible overvaluation of the business. We address her contentions in turn.

1. Salary normalization adjustments. When determining the cash flow of a business using a capitalization of earnings valuation methodology, "a reasonable salary expense for the operator of the business" must be subtracted from the business's income to avoid overvaluing the business. Sampson v. Sampson, 62 Mass. App. Ct. 366, 375-376 (2004). See Adams, 459 Mass. at 381.

Here, during the relevant years in question (2015, 2016, and 2017), the wife paid herself an average salary of $273,000. She asserted that this was consistent with the industry standard practice of paying prosthodontists between forty to fifty percent of their collections. Consigli, however, opined that the wife was overpaid, thus requiring a portion of her compensation to be added back into the practice's cash flow.

4

Consigli applied a salary normalization adjustment for each year to account for the difference between the wife's actual pay and what he viewed as reasonable compensation for her services based on the prevailing market rate for dentists in the Boston area. Consigli testified that the wife's salary exceeded the "industry average" by around $90,000 to $100,000,[4] which he based on his review of average salaries for dentists listed on Salary.com and Indeed.com, acknowledging that he could not differentiate between average compensation for dentists and prosthodontists. The judge implicitly credited Consigli's testimony regarding the salary normalization adjustments for 2015 and 2016, but declined to credit the adjustment for 2017, finding that there was no "reliable" evidence for determining the 2017 salary normalization adjustment.

The wife contends that the judge erred in (a) leaving Consigli's normalization adjustments for 2015 and 2016 intact when they were based on the same "unreliable" data as the 2017 adjustment rejected by the judge, and (b) ignoring the wife's "uncontested" testimony that her salary was reasonable and

_____

[4] Consigli testified that the wife's 2017 officer compensation was $270,000 as reported on tax return, and he made a normalizing adjustment of $90,000, making the normalized officer salary $180,000 for 2017. For 2016, her income was $284,000, and Consigli made an adjustment of $107,600, making the normalized officer salary $176,400 for 2016. For 2015, her income was $265,000, and Consigli made an adjustment of $92,128, making the normalized officer salary $172,872 for 2015.

5

consistent with the industry standard practice of compensating specialists based on a percentage of their collections.

a. Consigli's normalization adjustments. Although the judge found that Consigli was unable to "determine the salary difference between a dentist and a [p]rosthodontist" using Indeed.com and Salary.com, the judge did not find those websites to be wholly unreliable sources of information. The judge explained that she rejected the 2017 adjustment, which was the most heavily weighted, because Consigli "determined a salary range commensurate with [the wife's] education and experience by looking at dentist salaries on Indeed.com and Salary.com," he did "not make any distinction between the salaries of a general dentist and that of . . . a [p]rosthodontist," "[n]or did he review any industry specific information or government resources such as the Bureau of Labor Statistics to arrive at an accurate assessment of [the] [w]ife's salary for 2017." The wife contends that there was "no support" for leaving the 2015 and 2016 adjustments intact when they were based on the same "unreliable" data regarding salaries for dentists, rather than prosthodontists, that the judge rejected for 2017. However, the wife's own testimony reflected that the prosthodontics aspect of the practice grew each year and that prosthodontics accounted for a greater percentage of revenue in 2017, as compared to 2015 and 2016. Moreover, the percentage of collections specifically

6

attributable to the wife's prosthodontic work was the highest in 2017, as compared to 2015 and 2016.

Based on this testimony, the judge could reasonably infer that Consigli's inability to differentiate between average salaries for dentists and prosthodontists did not render the 2015 and 2016 adjustments unreliable because (1) the wife, and the practice as a whole, performed less prosthodontic work in those years; and (2) those years were given substantially less weight in Consigli's calculation of cash flow. Likewise, the judge could permissibly conclude that Consigli's use of a salary adjustment for 2017 based on a dentist's, rather than a prosthodontist's, salary was unreliable because the wife and the practice overall were doing more prosthodontic work in 2017, which was the most predictive and heavily weighted year in Consigli's cash flow calculation. See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 541 n.47 (1997) (when assessing trial judge's "finding of valuation . . . we will accept a judge's findings based on the evidence or a reasonable inference from it"). See also Clair v. Clair, 464 Mass. 205, 214 (2013), quoting Gabbidon v. King, 414 Mass. 685, 686 (1993) (appellate court "may consider any ground apparent on the record that supports the result reached in the lower court"). Accordingly, on this record, the judge's decision to reject the 2017 salary normalization adjustment, while crediting the 2015

7

and 2016 salary normalization adjustments, was not clearly erroneous. See Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 774 (2014) (judge "was entitled to credit all, part, or none" of expert's testimony); Child v. Child, 58 Mass. App. Ct. 76, 78 (2003), quoting Fechtor, 26 Mass. App. Ct. at 863 (in determining value of marital asset, trial judge "may accept or reject all or parts of the opinions offered," or "may reject expert opinion altogether and arrive at a valuation on other evidence").

b. The wife's testimony regarding compensation. The wife next contends that the judge, in accepting Consigli's salary normalization adjustments for 2015 and 2016, impermissibly ignored her "uncontested" testimony that her salary was consistent with the industry standard practice of compensating prosthodontists up to fifty percent of their collections. Although the judge did not explicitly reject this testimony by the wife, she implicitly found it not credible because she allowed the normalization adjustment for officer salary for 2015 and 2016. The judge was not required to credit the wife's testimony, see Vedensky, 86 Mass. App. Ct. at 774, and we see nothing in the record that warrants disturbing the judge's credibility assessment in this regard. See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).

8

Insofar as the wife claims that Consigli's testimony "unequivocal[ly]" confirmed that the industry standard for compensating prosthodontists was forty to fifty percent of their collections, we are unpersuaded. Consigli testified that he was aware that the specialists in the wife's practice were paid forty to fifty percent of their collections, and that "specialists [being] paid by measure of a percentage of their collections" was "a regular practice in the field of prosthodontics." However, at no point did Consigli testify that the industry standard compensation for all prosthodontists was forty to fifty percent of their collections.

We discern no error in the judge's treatment of the salary normalization adjustments and her ultimate determination of the wife's reasonable salary. Cf. Crowley v. Communications for Hosps., Inc., 30 Mass. App. Ct. 751, 756 (1991) (determination of reasonable compensation is question of fact reviewed for clear error).

2. Good will discount. "Good will is necessarily attached to a going business and relates to the name, location and reputation, which tends to enable the business to retain the patronage" of its customers (quotations and citations omitted). Slate Co. v. Bikash, 343 Mass. 172, 175-176 (1961). See In re Corrugated Paper Corp., 185 B.R. 667, 670 (D. Mass. 1995); In re Marriage of Nichols, 43 Colo. App. 383, 385 (1979). Here,

9

Consigli testified that for the purpose of his valuation, good will represented the percentage of patients at the practice who "come to just [the wife] and wouldn't go to anybody else" if she were to leave the practice following a sale of the business. He determined that the appropriate good will discount was twenty-one percent, and reduced the value of the business by $587,726 accordingly. The wife contends that Consigli's calculation of a twenty-one percent good will discount was "random[]," had no "reasonable or reliable basis whatsoever," and was "nothing more than a guess."

Here, in accepting Consigli's application of a twenty-one percent good will discount, the judge implicitly credited the following testimony. Consigli testified that he calculated professional good will as the difference between (1) the fair value of the practice using a capitalization of earnings methodology, which he determined to be approximately $2.8 million (before applying the good will discount); and (2) the value of the practice ($2.2 million) using an alternative valuation methodology derived from multiplying the practice's 2017 adjusted pre-tax income by the average EBIDA[5] multiple for dental practices. Consigli testified that the difference between those two valuation figures was equivalent to

---

[5] EBIDA is an acronym for "earnings before interest, taxes, depreciation, and amortization."

approximately twenty-one percent of his calculation of the business's fair value using the capitalization of earnings methodology, and represented the good will attributable to the wife. He further testified that his calculation of good will was consistent with the wife's representation that she was responsible for approximately forty percent of the total collections at the practice, and it was reasonable to estimate that around half of her patients might not remain at the practice if she left.[6]

In light of the foregoing, we cannot agree with the wife that Consigli's calculation of good will was random or "merely a guess." To the extent that the wife claims that the only appropriate methodology for calculating good will was to use "that percentage of revenue generated by her patients," she cites to no authority for the proposition that this is the sole manner for calculating good will, cf. In re Marriage of Nichols, 43 Colo. App. at 385 (good will often "difficult to value" and "elusive in nature"), nor does she demonstrate that she provided sufficient evidence for such a calculation to be made. Although Consigli testified that in order to calculate good will, one would "normally" look at the client base to determine which

---

[6] Again, we note that the wife did not proffer any expert witness other than herself, and relied solely on her own, unrecognized method of valuing the business.

11

patients specifically sought out the wife for their care and the revenue attributable to them, see id. (whether professional "can expect [her] patrons to return to [her]" is relevant to determining good will value), he asked the wife for a list of her clients, and for information regarding revenues collected per patient, but she did not provide either to him. Accordingly, where the wife failed to provide Consigli with the requested information regarding revenues from her patients, she cannot now complain that he resorted to an alternative methodology to calculate good will. Indeed, had he not used that alternative method, it is unclear whether he would have applied a good will discount at all, which would have resulted in a higher valuation to the wife's detriment. Accordingly, based on the information available to Consigli, and the evidence in the record, we discern no error in the judge's decision to credit his calculation of a twenty-one percent good will discount.

Conclusion. The supplemental judgment of divorce nisi, and

12

the orders denying the wife's separate motions to amend the divorce judgment and findings of fact, are affirmed.

<u>So ordered</u>.

By the Court (Sullivan, Massing & Hershfang, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered: April 7, 2023.

---

[7] The panelists are listed in order of seniority.