JULIE A. MORIARTY vs. RICHARD J. STONE.

No. 95-P-1484.

Hampden. May 10, 1996. - August 20, 1996.

Present: SMITH, PORADA, & IRELAND, JJ.

*Divorce and Separation,* Division of property, Pension benefits, Alimony, Attorney's fees, Amendment of pleadings.

In the circumstances of a divorce action, the judge did not abuse his discretion in valuing the parties' assets as of the time of a hearing of the case before a master. [154-155]

In the circumstances of a divorce action, the judge did not err by including in the assignable marital assets retirement benefits accrued by the parties prior to their marriage. [155-157]

In the circumstances of a divorce proceeding, the judge did not err, in fashioning an equitable division of marital assets under G. L. c. 208, § 34, in considering the parties' premarital contributions to assets brought into the marriage during a ten-year cohabitation period before the marriage. [157-158]

In a divorce proceeding the judge did not err in awarding "rehabilitative" alimony to the wife for a four-year period [158-159] or in awarding attorney's fees to her [159].

The record of a divorce proceeding supported the judge's finding that the husband had given approximately fifty items of jewelry to the wife. [159]

A party to a divorce proceeding demonstrated no prejudice from the judge's allowing, shortly before trial, an amendment to the complaint to allege as grounds cruel and abusive treatment. [160]

This court declined to award appellate costs or attorneys' fees. [160]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on May 29, 1990.

A motion to amend was heard by *Henry P. O'Connor,* J., and the case, together with a cross-claim for divorce, filed on September 24, 1993, was heard by him on a master's report.

*Efrem A. Gordon* for Richard J. Stone.

*Peter Roth* for Julie A. Moriarty.

PORADA, J. Julie A. Moriarty (the wife) filed a complaint

for divorce against Richard J. Stone (the husband) on May 29, 1990. The husband filed an answer to the complaint in December, 1991, and a cross claim for divorce on September 24, 1993. A judge in the Probate and Family Court referred the cross actions for a hearing to a master, who after twenty-three days of hearings issued a sixty-one-page report. The Probate Court judge confirmed the master's report with minor modifications. Judgments of divorce nisi were entered in May, 1995, granting both parties a divorce. Those judgments were subsequently amended. Under the amended judgments, the husband was ordered to pay to the wife alimony in annual installments of $20,000 for four consecutive years and to pay $45,000 toward the wife's legal fees. In addition, the amended judgments provided for a division of the marital estate, resulting in the wife receiving approximately a thirty-one percent share and the husband receiving a sixty-nine percent share of the total marital estate valued at $2,707,829.32 at the time of the hearing before the master. The husband appeals.

On appeal, the husband claims the judge in confirming the master's report erred in: (1) accepting the value of the marital assets as of the date of the hearing before the master; (2) including in the assignable estate the pension and retirement benefits of the parties that had accrued prior to the marriage; (3) considering in the division of the marital estate the contribution of each of the parties to the acquisition, preservation, and appreciation in value of the parties' separate property during their ten-year period of cohabitation prior to marriage; (4) awarding alimony to the wife; (5) awarding attorney's fees to the wife; (6) determining that the husband gave certain items of jewelry to the wife as gifts; and (7) allowing the wife to amend her complaint on the first day of trial to include cruel and abusive treatment as a ground for divorce. We affirm the amended judgments.

We summarize the pertinent facts found by the master and adopted by the judge. This was an eight-year marriage (1986-1994) preceded by a ten-year period (1976-1986) during which the parties lived together. The parties had no children. When they first met in 1975, the wife was twenty years old and working as a waitress; the husband was thirty-two years old, held a law degree, and operated a small retail and wholesale outlet store in which he sold antique jewelry and clothing to local customers. In 1975, the husband's business, "The Fam-

ily Jewels, Inc." (Family Jewels), which he had begun in 1970, had annual gross sales of $62,769 and an inventory of $5,728.

The wife began working for the husband as a clerk at the Family Jewels store on a full-time basis in late 1975. She was compensated for her work and learned the essentials of the antique jewelry business from the husband. Within approximately one year, the wife was involved in virtually all aspects of the business. As a result of the tireless effort of both the wife and husband, the business prospered and expanded to the international market. By 1985, the year preceding the parties' marriage, the business inventory was valued at $98,764 and the business had gross sales of $438,265. As a result of the success of the business, both the husband and wife were able to accumulate considerable savings and retirement benefits prior to their marriage on March 4, 1986.

As the parties' financial position improved, so too did their lifestyle. In 1981, they moved from a five-room apartment into an eighteen-room Tudor style house purchased with the husband's funds and maintained by domestic help. They entertained regularly, vacationed abroad, and gave gifts, including jewelry, to one another.

Notwithstanding the parties' success in business together, their personal relationship began to deteriorate after their marriage. There were numerous occasions when the husband was verbally abusive and, on at least one occasion, physically abusive toward the wife. The wife responded to this behavior by having an affair with another man in 1988 and in 1990. The wife left the marital home in May, 1990, and filed for divorce at that time. No activity occurred in the divorce action for a year and one-half thereafter; rather, the parties made various unsuccessful attempts at reconciliation.

At the time of the hearing before the master in 1994, the wife was living in a one-bedroom apartment in Maryland and operating a wholesale antique business that had inventory worth $64,600. At that time, her gross weekly income was $457, and her expenses were approximately $597 a week. She had assets in her own name valued at approximately $414,960. In contrast, the husband's lifestyle had not been affected by the parties' separation. He continued to reside in the eighteen-room house and to operate Family Jewels. His annual gross

taxable income for the years 1990 through 1992 averaged $231,000, and his living expenses averaged $585 a week or approximately $30,421 a year. His assets at the time of the hearing before the master were valued at $2,292,861.60, including the inventory of Family Jewels, which was valued at $710,000 by the master.

On the facts stated in his report, the master recommended that the wife retain the assets in her possession and that the husband make an additional lump sum cash payment to her of $435,000, less $58,000 advanced to her during the proceedings, which would result in an award of approximately thirty-one percent of the parties' total assets, and that the husband retain the balance of the assets in his possession. In addition, the master recommended that the husband pay alimony to the wife in the sum of $20,000 for a period of four consecutive years and that the husband contribute $45,000 to the wife's legal fees. The amended judgments of divorce substantially reflect the master's recommendations.[1]

We address the husband's claims.

1. *The property division.*

a. *Date of valuation of assets.* The husband argues that the master, and subsequently the Probate Court judge by confirming the master's report, erred in valuing the parties' assets as of the date of the hearing before the master. Relying on *Savides* v. *Savides*, 400 Mass. 250 (1987), he asserts that the marital assets should have been valued as of the date of the parties' separation in May, 1990, because the wife failed to contribute to the marital partnership after that time.

Although the marital estate is typically determined as of the date of the divorce trial, the judge has the discretion to make that determination at another date when warranted by the circumstances of a particular case. *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 370 & n.9 (1985). See generally Kindregan & Inker, Family Law and Practice § 1133 (1990 & Supp. 1995). Unlike the husband and wife in *Savides*, whose marriage for all intents and purposes ended on the date of

---

[1]The judge reduced the net lump sum payment to the wife from $377,000 to $375,000 and revised the time frames in which certain payments were to be made by the husband.

their separation some ten years prior to their divorce hearing, the master concluded that he could not with certainty find that the parties' marriage ended in May, 1990, the date of the parties' separation, because of their repeated efforts for a year and one-half thereafter to effect a reconciliation. In addition, unlike the wife in *Savides,* whose contribution to the marriage as a homemaker and mother ended with the parties' separation, the master found that here the wife's contribution did not end at the time of the separation, because the husband continued to reap financial benefits derived from the years of work by both the wife and husband to develop Family Jewels, including its goodwill and inventory.[2]

In light of the master's findings adopted by the judge, we conclude that the judge did not abuse his discretion in adhering to the usual practice of valuing the assets of the parties at the time of the hearing. See Kindregan & Inker, *supra* § 1133. Compare *Pare* v. *Pare,* 409 Mass. 292, 296 n.4 (1991) (where property division takes place in a separate proceeding after the divorce, the property is valued at the time of the separate proceeding, but the G. L. c. 208, § 34, factors are applied as of the time of the divorce).[3]

b. *Premarital retirement benefits.* The husband argues that the judge erred in including within the assignable estate under G. L. c. 208, § 34, as amended through St. 1990, c. 467, the parties' premarital pension and retirement-related benefits. The second sentence of G. L. c. 208, § 34, as amended

---

[2]In any event, the husband's reliance on *Savides* is misplaced because the judge did not in that case, as the husband suggests, assign the marital property solely by reference to the date of the parties' separation. See 400 Mass. at 252-253.

[3]In conjunction with his argument concerning the date of the valuation of the assets, the husband asserts that the master erred in concluding that the fair market value of the inventory of Family Jewels was $710,000. It is open to debate whether the designation of issues contained in the husband's notice of appeal encompasses the valuation of the business inventory. However, even if we were to assume the issue is properly before us, there was no error. The master was entitled to consider the myriad evidence on the subject of valuation and come to his own conclusion as to the fair market value of the inventory. *Sarrouf* v. *New England Patriots Football Club, Inc.,* 397 Mass. 542, 550 (1986). His finding as to value fell within the middle of the ranges offered by the parties and their experts (a low of $325,992 to a high of $1,090,000) and cannot be said to be without evidentiary foundation. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 483 (1991).

through St. 1989, c. 559, provided: "[i]n addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other." Statutes 1990, c. 467, amended this sentence by adding the following language:

> "including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retire-ment benefits, military retirement benefits if qualified under and to the extent provided by federal law, pen-sion, profit-sharing, annuity, deferred compensation and insurance."

The husband, seizing on the language "all vested and non-vested benefits, rights and funds *accrued during the marriage"* (emphasis supplied), argues that the court was without authority to include within the assignable estate that part of the parties' pension, profit-sharing, and retirement benefits that accrued prior to the marriage.[4] See *Dewan* v. *Dewan,* 17 Mass. App. Ct. 97, 101 (1983), *S.C.,* 399 Mass. 754 (1987) (where division is made to apply to pension benefits when received, the award is typically of a percentage of that por-tion of the benefits attributable to the period of the marriage).

While it is true that the 1990 amendment to § 34 has gener-ated some confusion regarding the treatment to be accorded pension and other retirement-related funds and benefits ac-crued prior to marriage, see Kindregan & Inker, *supra* § 1046 (Supp. 1995), we do not construe the second sentence of § 34, as amended by St. 1990, c. 467, to require a judge to exclude from the parties' assignable estate, the pension, retirement, and other benefits accrued prior to the marriage. The 1990 amendment left unchanged the language "all or any part of the estate of the other." The term "estate" has traditionally encompassed all property to which a party holds title, when-

---

[4]As the judge allowed each party to retain his or her own pension and retirement benefits, he did not, in a technical sense, assign to either party a portion of the estate of the other. We reach the issue because the judge's determination that the pension and retirement benefits were part of the as-signable estate may have been a factor in his over-all allocation of the par-ties' assets. It is apparently the husband's position that the 1990 amend-ment evinces an intent on the part of the Legislature to exclude retirement-related benefits accrued prior to the marriage from the estate to be divided under § 34.

ever and however acquired, and includes property obtained by a party before marriage. *Rice* v. *Rice,* 372 Mass. 398, 400-401 (1977). See also *Lauricella* v. *Lauricella,* 409 Mass. 211, 214 (1991); *Heins* v. *Ledis,* 422 Mass. 477, 483-484 (1996). We do not think that, by amending § 34 to specify certain types of property included therein, the Legislature intended to alter the long-established definition of the "marital estate" subject to division. Our conclusion finds support in the statutory language itself, for the reference to "benefits, rights and funds accrued during the marriage" is preceded by the phrase *"including but not limited to"* (emphasis supplied). Consequently, the amendment by its own language would not limit the judge's authority to assign "all or any part" of a party's estate.

In reaching our decision, we do not intimate that the · concept of contribution has in any way lost its vitality. The parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate. See *Heacock* v. *Heacock,* 402 Mass. 21, 24 (1988) ("The purpose of . . . the division of marital property is to recognize and equitably recompense the parties' respective contributions to the marital partnership"); *Heins* v. *Ledis,* 422 Mass. at 482 ("Property division . . . is based on the joint contribution of the spouses to the marital enterprise," quoting from Inker, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L. Rev. 1, 11 [1975]). We simply hold that the judge did not err by including the parties' retirement-related benefits that were accrued prior to the marriage in the § 34 estate.

c. *Contribution during the period of premarital cohabitation.* The husband argues that the master, and subsequently the judge by confirming the master's report, erred in considering the parties' premarital contributions to the various assets brought into the marriage. The master found that both parties had made valuable contributions to the premarital partnership and that such contributions had resulted in the accumulation of significant assets, most of which were held in the husband's name. The master in making his property division recommendations considered the parties' respective contributions to the accumulation, preservation, and appreciation of various assets during the ten-year period they lived together prior to marriage. Absent clear statutory authority,

the husband argues, the master and subsequently the judge, in confirming the report, erred in doing so.

The husband's argument fails for several reasons. The Supreme Judicial Court has recognized that in appropriate instances a judge may consider the "circumstances [of the parties] prior to the marriage" and, more specifically, the parties' contributions during a period of cohabitation in fashioning an equitable division under § 34. See *Liebson* v. *Liebson,* 412 Mass. 431, 432-433 (1992). See also Harvey, Moriarty & Bryant, Massachusetts Domestic Relations § 31:7B (1994). Here, there is no question from the master's findings adopted by the judge that the wife and husband by their joint efforts built Family Jewels into a successful and prosperous business during their ten years of premarital cohabitation, enabling both parties to accumulate various assets. As a result, in the circumstances presented, it would not only be unfair and inequitable to disregard the parties' respective contributions during their ten-year period of cohabitation but also inconsistent with the concept of "contribution" as embodied in § 34. See, e.g., *deCastro* v. *deCastro,* 415 Mass. 789, 795 (1993); *Charrier* v. *Charrier,* 416 Mass. 105, 112 (1993).

2. *Alimony.* The husband argues that the judge erred in awarding alimony to the wife as she is a highly skilled professional who, by the terms of the amended judgments, will possess assets worth approximately $850,000.

"An award of alimony is improper absent a finding of financial need on the part of the recipient spouse." *Heins* v. *Ledis,* 422 Mass. at 484. "The standard of need is measured by the 'station' of the parties — by what is required to maintain a standard of living comparable to the one enjoyed during the marriage." *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 819 (1985). When alimony is short-term, or "rehabilitative," its purpose is "to protect, for a limited time, a spouse whose earning capacity has suffered (or become nonexistent) while that spouse prepares to reenter the work force." *Bak* v. *Bak,* 24 Mass. App. Ct. 608, 621-622 (1987). See also *Heins* v. *Ledis,* 422 Mass. at 485 n.4; *Gordon* v. *Gordon,* 26 Mass. App. Ct. 973, 974 (1988).

Here, the award of alimony to the wife was $20,000 per year for a period of four years. The master made detailed findings, adopted by the judge, concerning his rationale for the award. Among other things, he considered the wife's

diminished earnings, the wife's reduced lifestyle, the husband's substantial earnings, and the husband's unchanged lifestyle. The master also found that a substantial portion of the wife's assets consisted of retirement funds to which she had no access until she was over fifty-nine years old.[5] He reasoned that the wife, who had not received financial assistance from the husband during the separation, needed the stability provided by the stream of income from alimony to give her the opportunity to build up her antique jewelry business and become self-supporting at a level somewhat commensurate with the lifestyle enjoyed by the parties during their marriage.

Based on the master's findings and rationale, which were adopted by the judge, it simply cannot be said that the judge abused his discretion or otherwise erred as matter of law in awarding the wife alimony for a short time so that she will not have to deplete her assets to support herself at a reasonable level until her new business becomes reasonably profitable. The mere fact that the property assignment may provide the wife with resources to generate additional income would not, in the circumstances here present, require a different result. *Johnston* v. *Johnston,* 38 Mass. App. Ct. 531, 537 (1995). Cf. *Rosenberg* v. *Rosenberg,* 33 Mass. App. Ct. 903, 904-905 (1992).

3. *Attorney's fees.* The husband argues that the judge erred in awarding the wife $45,000 in attorney's fees where the marriage was brief and the wife possessed significant assets. A judge has considerable discretion in determining the necessity and the amount of attorney's fees. *Brash* v. *Brash,* 407 Mass. 101, 106 (1990). *Bisienere* v. *Buccino,* 36 Mass. App. Ct. 749, 752-753 (1994). Such an award is "presumed to be right and ordinarily ought not to be disturbed." *Ross* v. *Ross,* 385 Mass. 30, 39 (1982). Here, the master and the judge were intimately familiar with the parties' circumstances and the husband's superior financial position. Considering that the wife's legal fees were found by the master to exceed $150,000, we conclude that the judge did not abuse his discretion in awarding her a portion of those fees in the amount of $45,000.

4. *Other issues.* Contrary to the husband's assertion, there is support in the record for the master's finding that the husband had given approximately fifty items of jewelry to the wife. The judge did not err in adopting this finding.

[5]The wife was thirty-nine years of age at the time of the divorce hearing.

As for the husband's claim that the judge abused his discretion in allowing the wife, on the "eve of trial" and almost four years after she had filed her original complaint, to amend her complaint to allege as grounds cruel and abusive treatment, it is enough to say leave to amend is to be freely given when justice so requires. Mass.R.Dom.Rel.P. 15(a) (1975). *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991). Further, the husband has failed to demonstrate how he was prejudiced by the allowance of the motion. See *Hamed* v. *Fadili*, 408 Mass. 100, 105 (1990). There was no abuse of discretion.

5. *Appellate costs and counsel fees.* The wife has requested that we award her double costs and attorney's fees because of the frivolous nature of the husband's appeal. We do not agree with the wife that all of the arguments raised by the husband on appeal have no reasonable basis in fact or law. We decline, therefore, to impose double costs or attorney's fees. See *Symmons* v. *O'Keefe*, 419 Mass. 288, 303-304 (1995).

> *The amended judgments of divorce nisi, as corrected on May 9, 1995, are affirmed.*