Joan Bertocchi Ross *vs.* Adam J. Ross.

No. 98-P-992.

Essex. May 4, 2000. - September 13, 2000.

Present: Brown, Perretta, & Greenberg, JJ.

*Divorce and Separation,* Alimony, Division of property, Child support, Attorney's fees.

In a divorce proceeding, the judge incorrectly ordered that the husband's obligation to pay alimony would cease when the husband reached the age of sixty-five, where the alimony award was not rehabilitative, and where the termination bore no relationship to the wife's ability to maintain her standard of living or the husband's ability to pay. [79-81] Brown, J., concurring.

In a divorce action, the judge's findings demonstrated that he had considered all the statutory factors in his division of marital assets, and the wife did not demonstrate that the judge's allocation was "plainly wrong or excessive" [81]; nor did the judge overvalue the wife's personal property [81-82]; further, the judge acted within his discretion to determine the value of the husband's business interests [82]. Brown, J., concurring.

In a divorce proceeding, the judge did not err in ordering the wife to pay the education expenses of the two children in the amount of $32,000 from the total of $90,000 per year paid by the husband as child support. [82-83] Brown, J., concurring.

A Probate Court judge acted within his discretion to allow the husband in a divorce proceeding to secure his alimony and child support obligations by designating taxable death benefits from his retirement funds. [83] Brown, J., concurring.

In a divorce proceeding, there was no merit to the wife's claim that the judge's failure to award attorney's fees amounted to an abuse of discretion. [83] Brown, J., concurring.

Complaint for divorce filed in the Essex Division of the Probate and Family Court Department on August 7, 1995.

The case was heard by *Edward J. Rockett,* J.

*David E. Cherny* (*Peter A. Kuperstein* with him) for Joan Bertocchi Ross.

*David H. Lee* (*Marc J. Cooper* with him) for Adam J. Ross.

Greenberg, J. Of twenty-four orders encompassed by a

divorce judgment nisi, Joan Ross (Joan) appeals from five: (1) a restriction on the alimony award; (2) the allocation of the marital assets; (3) the assignment to her of responsibility for the children's private school tuition; (4) an authorization for Adam Ross (Adam) to secure payment of alimony and child support obligations by a taxable retirement death benefit; and (5) the failure to award reimbursement of her counsel fees and costs of the divorce litigation.

Before Joan and Adam married in 1982, she worked as a secretary for him at Thomas E. Sears, Inc., where he is the executive vice-president, as well as being the vice-president of its three affiliate corporations. He is thirteen years her senior, and theirs was his second marriage, although it was the first for her. When they wed, almost all of their assets were Adam's, with Joan bringing no assets to the marriage but her car. They purchased a large house on Hesperus Avenue in Magnolia, the southern part of Gloucester, right away, and Joan left the work-force to establish a home and family life. Within a year, they had a daughter, and a second daughter completed their family in 1985. Adam's corporate work brought handsome salary increases and bonuses, and his income eventually exceeded $500,000 a year. The Rosses' assets included the primary residence in Magnolia (worth $1.1 million), vacation homes in both Florida and Vermont, luxury automobiles, private country club memberships, and so forth. The two children, ages fourteen and twelve at the time of trial, attended private schools. As the years passed, Joan, Adam, and the girls engaged in many athletic pursuits. The children became highly proficient in tennis and played in tournaments, some distant from home. Adam trained and competed in triathalons. In addition to working fifty hours a week, this left him with little time, according to Joan, for com-municating with the rest of the family. Other strains, not relevant to our review, also caused their relationship to sour and, in 1995, Joan filed a complaint for divorce. A temporary order entered, providing that $20,000 from the marital estate be made available to Joan for her counsel fees, and later another temporary order awarded each party $270,000 as an advance distribution of marital assets. Trial was held on four days in the fall of 1997.

The judge awarded physical custody of the children to Joan, but the parties share legal custody, and Adam was granted visitation. Adam remains responsible for providing Joan and the

children with health insurance and will pay for eighty per cent of the girls' uninsured medical and dental expenses. Joan may claim the children as dependents for tax purposes.

The judge found that the aggregate marital assets amounted to more than ten million dollars. His judgment included awards to Joan of the' mortgage-free Magnolia house and its furnishings, 42.5% of the value of the Florida property, 42.5% of the value of the Rosses' limited partnership investments, $1,543,087 from their joint Fidelity account, $150,000 from that portion of Adam's profit sharing plan that had accrued since the date of their marriage, and her automobiles, jewelry, and furs. On the basis of the values assigned by the judge, the assets which Joan was to take under the divorce judgment came to $3.4 million, or approximately thirty-four per cent of the marital estate. If the premarital portion of Adam's profit sharing plan were excluded from consideration, Joan's share would amount to forty-three per cent. She also was awarded $90,000 per year in child support, to be terminated when the children are emancipated, and $90,000 per year in alimony, to be terminated at either party's death, Joan's remarriage, or Adam's sixty-fifth birthday (then eleven years hence), whichever occurs first. To provide security for these payments in the event of Adam's death, the judge ordered him to designate Joan as beneficiary of $625,000, and the children as beneficiaries of $625,000 more, either of a life insurance policy or of death benefits from his retirement funds.

1. *Limited alimony.* Joan argues that the judge erred in ordering that her alimony award would terminate when Adam reached the age of sixty-five. There is no formula by which a probate judge determines whether to grant alimony and if so, how much and for what period of time. See *Rosenblatt* v. *Kazlow-Rosenblatt*, 39 Mass. App. Ct. 297, 299 (1995). Instead, the judge considers the mandatory factors enumerated under G. L. c. 208, § 34, as appearing in St. 1989, c. 287, § 59: "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income."[1] The parties' needs are determined by the amount necessary "to maintain a standard of living comparable to the one enjoyed during the

---

[1]"The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates

marriage." *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985). This ideal is subject, of course, to the provider spouse's ability to maintain two such households. See *Heins* v. *Ledis*, 422 Mass. 477, 484 (1996); *Rosenberg* v. *Rosenberg*, 33 Mass. App. Ct. 903, 904 (1992). Finally, "a judge of a Probate Court may not order the termination of alimony on the occurrence of an event unrelated to the recipient spouse's need for alimony or the supporting spouse's ability to pay." *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 618 (1986).

Typically, alimony awards of limited duration are intended to be "rehabilitative." Such an award may be appropriate where a husband and wife of comparable professional and economic status divorce. See *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 16 (1979). In these circumstances, a limited term award would permit a spouse who had discontinued a career to resume it, and thereafter each independently could approximate the marital standard of living. See *ibid*. Before awarding rehabilitative alimony, the recipient spouse's realistic prospects for self-sufficiency must be "considered with care." *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 622 n.14 (1987). The judge in the case at bar found that Joan's potential earning capacity was between $15,000 and $20,000 per year, an amount not likely to enable her to provide for herself and the children in the manner to which they had become accustomed. Regardless, the alimony awarded here was not rehabilitative; the judge clearly stated that he did not rely on Joan's potential earning capacity in determining her alimony and child support awards.

Although not explained in the judge's order, we presume (as both parties did in their briefs) that alimony was ordered to terminate when Adam becomes sixty-five because that is a common age for retirement. Such an anticipation of future events is improper, even where the projected date is only three years off. See *Martin* v. *Martin*, 29 Mass. App. Ct. 921, 921-923 (1990) ("as plausible as not that the husband will stay active in his employment for more than three years"). Regarding an event which was then eleven years down the road, the speculation is even greater. If Adam's ability to pay or Joan's needs should change materially — when Adam turns sixty-five or at any other time — either party may petition for a modification. See G. L. c. 208, § 37; *Heins* v. *Ledis*, 422 Mass. at 483. Meanwhile,

and the contribution of each of the parties as a homemaker to the family unit." G. L. c. 208, § 34.

however, Joan's needs are "current and predictable." *Martin* v. *Martin*, 29 Mass. App. Ct. at 923. This portion of the judgment cannot stand.[2]

2. *Inequitable property division.* Joan complains that the judge erred in three specific ways in the allocation of marital assets. First, she claims that he failed to include the premarital portion of Adam's profit sharing plan in the marital estate. This misstates the record. The judge was careful to point out that he was cognizant of the fact that all assets were included in the marital estate. His decision was not to exclude assets from the estate, but to award all of the premarital portion of Adam's profit sharing plan to Adam. His findings show that he considered all of the statutory factors, and we see no cause to overturn his decision. General Laws c. 208, § 34, "empowers probate judges incident to a divorce proceeding to employ broad discretion . . . in dealing with property and its equitable division." *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 922 (1982), quoting from *Newman* v. *Newman*, 11 Mass. App. Ct. 903, 903 (1981). This includes the discretion not to divide certain assets between the parties. See *Williams* v. *Massa*, 431 Mass. 619, 625-627 (2000) (affirming distribution of husband's inherited and gifted assets solely to husband). Pension benefits, for example, typically are divided as "a percentage . . . of that portion of the pension benefits attributable to the period of the marriage." *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97, 101 (1983). Joan has failed to show that in her case it was "plainly wrong and excessive," *Rice* v. *Rice*, 372 Mass. 398, 402 (1977), to limit her share of Adam's profit sharing plan to that portion that is attributable to the marriage.

Next, Joan claims that the judge overvalued her personal property. "Mathematical precision is not required of equitable division of property . . . ." *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 861 (1989). The valuation of her furs and jewelry was based on the amounts for which those items were insured — not an unreasonable method in light of the complete lack of any credible, alternative evidence. While it is unclear what formed the basis for the judge's assessment of Joan's home furnishings (as it necessarily would be, since no evidence as to their worth appears in the record), he valued them at $30,000, or less than 0.3% of the marital estate. Since Joan does not insist that the

[2] This opinion does not address situations in which the parties have agreed to term alimony.

furnishings for her $1.1 million home are completely worthless, this dispute involves a still smaller percentage. "[E]ven if there are some errors, we deem them insignificant." *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 613 (1990).

Third, Joan claims that the judge erred in finding that Adam's business interests amounted to an average of the two numbers offered by the parties' respective experts. While the appellate courts of Massachusetts do not appear to have directly addressed this issue before, we have skirted its edges: judges are free to find that experts' evaluations unduly favor their clients and discount the numbers accordingly, see *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 483-484 (1991); and a finding "within the middle of the ranges offered by the parties and their experts . . . cannot be said to be without evidentiary foundation," *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 155 n.3 (1996). These decisions suggest our holding: judges are within their discretion to average conflicting experts' assessments. In this, we are in accord with the majority of other jurisdictions to have considered the issue. See, e.g., *Converse* v. *Converse*, 198 Mont. 227, 231-232 (1982); *Frost* v. *Frost*, 84 Ohio App. 3d 699, 712 (1992); *Aletto* v. *Aletto*, 371 Pa. Super. 230, 242 (1988); *Newmeyer* v. *Newmeyer*, 745 P.2d 1276, 1278-1279 (Utah 1987). But see *Crooker* v. *Crooker*, 432 A.2d 1293, 1296 (Me. 1981) (stating that simply averaging conflicting values "tends to debase the judge's role as a finder of facts"). There was no error here.

3. *Private school tuition.* Joan argues that the judge erred in ordering her to pay all expenses in connection with the ongoing private school education for the girls prior to college, a total yearly cost of approximately $32,000. Payment of these expenses, however, is consistent with her obligation to contribute to the support of the children. See *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 341 (1980). "Although a judge has considerable discretion in determining support obligations, children are entitled to adequate support and maintenance reasonably within the power of both parents to furnish it." *Redding* v. *Redding*, 398 Mass. 102, 110 (1986). The judge took into account the children's private school tuition in determining Joan's needs, and he also ordered that Adam will bear almost all of the costs of the children's medical and dental expenses until their emancipation. The deduction of the $32,000 in tuition payments from the $90,000 total per year in child support leaves $58,000 with which to satisfy the remaining needs of the

children each year. We also note that the girls are to be considered Joan's dependents for tax purposes. The requirement that she make their tuition payments was not error.

4. *Form of the security.* Joan maintains that the trial judge erred in allowing Adam to provide security for his alimony and child support obligations through the designation of death benefits from his retirement funds, rather than through acquiring life insurance, because the former is taxable and the latter is not, resulting in a smaller actual security. She did not argue so at trial, however. "If parties do not request the judge to consider particular tax consequences and do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues." *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. at 866. See *Williams* v. *Massa*, 431 Mass. at 630 ("the judge's failure to consider tax consequences . . . was not plainly wrong, because the wife presented no evidence on that subject"). In any event, the decision to require security in any form lies within the broad discretion of Probate Court judges. See G. L. c. 208, § 36; *Pare* v. *Pare*, 409 Mass. 292, 298-299 (1991). The security provided here is ample: $625,000 to secure alimony and $625,000 to secure child support, for a total of $1.25 million in designated death benefits to be maintained so long as the support obligations exist. This is the equivalent of almost seven years of the $180,000 per year that Adam owes on these obligations. In another similar case, we approved $500,000 in life insurance to secure an alimony award of $60,000 (the equivalent of slightly more than eight years of alimony), but with a clause permitting a $100,000 reduction in the security amount every five years. See *Wooters* v. *Wooters*, 42 Mass. App. Ct. 929, 931 (1997). The order for $1.25 million in death benefits as security, taxable though it may be, was a "reasonable contingency provision." *Freedman* v. *Freedman*, 49 Mass. App. Ct. 519, 524 (2000).

5. *Costs and fees.* "There is no merit in the wife's assertion that the judge's failure to award attorney's fees amounts to an abuse of discretion." *Williams* v. *Massa*, 431 Mass. at 635. Joan's motion for costs and counsel fees was denied because both parties had received a pretrial distribution of $270,000, and Joan earlier had been granted $20,000 more for her counsel fees. The decision not to award fees was within the judge's discretion. See *ibid.*

6. *Conclusion.* We affirm the judgment of March 23, 1998,

with the sole modification that paragraph six shall omit the words "or November 22, 2008, at the time the defendant reaches 65 years of age" and shall insert the word "or" between "the death of the defendant" and "the remarriage of the plaintiff." The parties' requests for the counsel fees and costs of this appeal are denied.

*So ordered.*

BROWN, J. (concurring). Although I am in substantial agreement with the result reached in this case, two cautionary remarks seem to be warranted. On the question of the valuation of Adam's business interests, I am obliged to admit to being troubled by the specter of trial judges (perhaps regularly and without in-depth analysis) simply averaging the assessments of value proffered by opposing experts.[1] While I agree that a value reached upon averaging has some evidentiary foundation, cf. *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 155 n.3 (1996), and that a judge generally should have discretion to average conflicting assessments of value, the methodology employed here should not, in my view, be considered a preferred one.

I also find it necessary to comment on an additional aspect of the decision. Although a judge must take care to cause marital assets to be distributed *equitably*, see *Williams* v. *Massa*, 431 Mass. 619, 626 (2000), our opinion should not be read as an endorsement of substantially unequal property distribution in marriages of long term. Rather, each case must be decided on its particular facts as reflected in the factors specified in G. L. c. 208, § 34.

---

[1]For an excellent discussion of valuation, see *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 862-867 (1989).