VINOD K. ADLAKHA vs. PURNIMA S. ADLAKHA
(and a companion case[1]).

No. 04-P-1288.

Hampden. January 5, 2006. - March 31, 2006.

Present: GELINAS, KAFKER, & GREEN, JJ.

*Divorce and Separation,* Division of property, Alimony.

The judge in a divorce action did not abuse his discretion in dividing the marital property, and properly took into consideration the G. L. c. 208, § 34, factors, where the award to the wife of the family home and her medical practice reflected her far greater contributions to the building of those two assets, and where the award to the husband of a greater amount of investment and retirement accounts reflected his contribution as investor of the family funds. [864-865]

In a divorce action, the judge did not improperly treat the wife's medical practice both as an asset of the marital estate (for purposes of dividing the marital property) and as income to her (for purposes of establishing an alimony award), where the parties identified the separate bases for the alimony award and the property division by distinguishing the income of the medical practice from the wife's reasonable salary, which was deducted as an expense of the practice [865-866]; likewise, there was no discernable error in the judge's consideration of the potential tax consequences of the husband's capital losses in the division of property [866-867].

This court remanded a divorce action, where the record was not sufficient to permit this court to resolve questions regarding the amount and duration of alimony awarded to the husband, as well as the duration of an award to him of health insurance payments. [867-871]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on March 14, 2002.

The case was heard by *David G. Sacks,* J.

*Bruce D. Clarkin* for Vinod K. Adlakha.

*Ellen M. Randle* for Purnima S. Adlakha.

KAFKER, J. Vinod K. Adlakha (the husband) and Purnima S. Adlakha (the wife) cross-appeal from a judgment of divorce

[1]Purnima S. Adlakha *vs.* Vinod K. Adlakha.

nisi of the Probate and Family Court, which allocated to the husband forty-three percent of the marital assets and limited duration alimony in the amount of $600 per week for a period of two years. The judgment also required the wife to pay for health insurance for the husband for two years. The husband contends that the judge erred in his division of property, amount of alimony, and two-year limitation on health insurance and alimony.

In addition to countering the husband's arguments, the wife, on her cross appeal, contends that the judge erred in valuing her medical practice as both a marital asset and as income ("double dipping"), in failing to include carry-forward tax losses when evaluating the marital asset base, and in disproportionately allocating certain classes of assets between the parties. She also argues that the husband was not entitled to any alimony.

*Background.* The parties were married in New Delhi, India, on January 24, 1984. The wife immediately requested a divorce and remained in India; the husband returned to the United States. In the spring of 1985, after reconsidering, the wife came to live with the husband in the United States while she completed studies that would allow her to be certified to practice medicine in the United States.

For much of the first decade of their married life, the parties lived apart: the wife pursued her career as a physician while the husband worked as a nuclear engineer in various locations around the country. Between 1985 and 1995, the parties lived together for a total of approximately three years. They also lived together from 1996 until their separation on February 1, 2002. During their prolonged periods of separation, the parties "developed lifestyles separate and apart from each other," and "were each responsible for maintaining their own residences and kept their finances separate."

The husband graduated from college in India and, in 1977, earned a degree in industrial engineering from Virginia Polytechnic Institute. He was employed as an engineer at various positions in the nuclear energy industry from 1977 through 1995.[2] Upon the termination of his employment at a facility in 1995, the husband determined that as a result of lack of new construction

[2]In 1992, the husband's taxable income was $78,635; in 1993, $48,677; in 1994, $73,366; and during the first seven months of 1995, $41,161.

of nuclear facilities, opportunities in nuclear engineering were scarce. He therefore elected not to seek employment in that field.

In 1996, the husband opened a jewelry kiosk business at a mall in Connecticut which failed and was closed in the summer of 1999. From the summer of 1999 until the parties' separation in February, 2002, the husband was unemployed outside the home. He did, however, manage the parties' investment assets, traded mutual funds, and made decisions about buying and selling stock in the accounts. At one point the parties' accounts were valued at $5 million, resulting from market growth, particularly in technology stocks. The parties realized capital gains in 1999 of $947,571 and in 2000 of $283,227. The parties incurred substantial losses when the stock market declined.

In October, 2001, the husband was diagnosed with depression resulting from marital stress and his recent losses in the stock market. At various times since then, he has been treated by mental health professionals and has been on antidepressants. In December, 2001, the husband, after a physical altercation with the wife's son (from an earlier marriage), began to suffer crying spells and panic attacks and was diagnosed with posttraumatic stress along with anxiety and depression. The husband's mental health improved after his relocation to Houston, Texas, where his family (from an earlier marriage) is located. The wife also suffered "a severe adjustment disorder" upon the husband's departure from the marital home. Her symptoms included sleep and appetite difficulties, other physical problems, and periods of tearfulness, agitation, and anxiety.

The parties' standard of living evolved throughout the marriage. The judge found that it was "lower middle class" between 1985 and 1988, when the wife was a student and homemaker and the husband worked full-time. It continued as "lower middle class" when the wife went through her medical residency. In 1991, it improved when the wife began her private medical practice. It became "very high" in 1997 and 1998, as her practice developed and they thrived in the stock market.

At the time of trial, the husband (age fifty-four) was working as a salesperson in a tile store in Houston, Texas, where he was paid ten dollars per hour for thirty-six hours of work per week. At that time, the wife (age fifty) had a successful private practice

in internal medicine in Holyoke; she was found to have "averaged approximately $266,000 in self-employed income since 1999."[3] The parties' major marital assets were the marital home in Longmeadow (fair market value of $490,000 less mortgage of $148,736, or $341,264); bank and retirement accounts (totaling $731,823 for the husband[4] and $504,461 for the wife) and the wife's medical practice (fair market value of $260,000).

The case was tried to a master who found that the husband was currently underemployed, that he required alimony and medical insurance coverage to be provided by the wife for a two-year period,[5] that "[the wife's] contribution to the marital partnership exceeded that of the [husband] and the greater burden and responsibility fell to her with regard to their real estate and her medical practice" and "[c]onsequently, an equitable but disproportionate division of marital assets is appropriate."

After both parties filed their objections, a Probate and Family Court judge remanded the matter to the master to answer discrete questions. One of the questions was "Whether capital losses incurred from stock investments are a marital asset which should be reallocated and divided between the parties[?]" The master issued supplemental findings and conclusions on remand, answering the foregoing question by noting that the parties had failed to introduce any evidence regarding the potential tax consequences of the capital losses, that he thus need not reach the issue, and that, in any event, the parties' shares of the marital estate were equitable.

The judge entered a judgment of divorce nisi, ordering the wife to pay the husband the "slightly reduced" amount of $600 per week as alimony for two years and to pay for the husband's

---

[3]The judge also referenced the wife's financial statements. Her June 16, 2003, financial statement reported her self-employment income as $2,361.66 per week, while her March 18, 2003, financial statement reported $4,036.77 per week. Her 2002 form 1040 reported business income of $286,136, while her amended 2002 form 1040 reported corrected adjusted gross income of $195,827.

[4]The master uses the figure $721,283, but the judge determined that this figure should be $731,283.

[5]The master recommended that the husband receive alimony in the amount of $1,000 per week for the first year and $500 per week for the second year.

health insurance coverage for two years. He awarded the husband marital assets of $731,283 and the wife $504,461 plus the marital home as part of a division of property. He also ordered the wife to pay the husband $57,892 within ninety days.

*Discussion.* "If a judge has made findings consistent with his obligations under G. L. c. 208, § 34 . . . indicating that he has fairly considered all factors relevant under § 34 and has not considered any irrelevant matter, his determinations as to alimony and property division may not be reversed unless 'plainly wrong and excessive.' . . . The judge's reasons for his conclusions, however, must be apparent in his findings and rulings." *Redding* v. *Redding,* 398 Mass. 102, 107-108 (1986). See *Heins* v. *Ledis,* 422 Mass. 477, 481 (1996).

1. *Property division.* The husband first challenges the judge's distribution of the marital estate, arguing that the award of 57.4 percent of the assets to the wife and only 42.6 percent to the husband amounted to an abuse of discretion. We disagree. The "ultimate goal of G. L. c. 208, 34," is "an equitable, rather than an equal, division of property." *Williams* v. *Massa,* 431 Mass. 619, 626 (2000). "To that end, a judge is required to consider the respective contributions of the parties to the marital partnership, and a disparity in contributions may be reflected in the distribution" of the estate. *Ibid.*

Here, the judge found that the wife "was the principal contributor to the Longmeadow real estate [the family home] and paid [nearly] all the household expenses, including mortgage and maintenance." She also built up her medical practice, a sole proprietorship and substantial asset of the marital estate, "with her own funds [and] by herself, without partners or associates, and without any contribution from the [husband]."[6] The husband's primary contribution to the martial estate was through his investing. The master further found that the wife's "contribution to the marital partnership exceeded that of the [husband] and the greater burden and responsibility fell to her with regard to their real estate and her medical practice." "Consequently," the

---

[6]We note that the husband did appear to have supported the wife from 1985 to 1988 when she completed her medical studies. During this period of time, however, the wife was the primary homemaker.

master and judge concluded that "an equitable but disproportionate division of marital assets is appropriate." The wife was awarded the house, her medical practice, and $504,461 in investment and retirement funds, while the husband was awarded $731,283 in investment and retirement funds.

Based on the judge's fact finding and consideration of the G. L. c. 208, § 34, factors, we conclude that there was no abuse of discretion in this proportionate split of the marital estate. The award to the wife of the Longmeadow home and her medical practice reflected her far greater contributions to the building of those two assets, while the award to the husband of a greater amount of investment and retirement accounts reflected his contribution as investor of the family funds. "The parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate." *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 157 (1996).

Before considering the alimony award, we also briefly address two property division issues raised in the wife's cross appeal: double counting (or double dipping) and tax losses. The wife argues that the judge erroneously treated her medical practice both as an asset of the marital estate and as income to the wife. "Commentators use the phrase 'double dipping' to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." *Champion* v. *Champion*, 54 Mass. App. Ct. 215, 219 (2002). We have, however, declined to find inequitable double dipping where it is possible to "identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations." *Dalessio* v. *Dalessio*, 409 Mass. 821, 828 (1991), *S.C.*, 413 Mass. 1007 (1992). For example, where one spouse is the sole proprietor of a small business, it was possible to identify these separate bases by distinguishing the income of the business from the reasonable salary of the owner-operator, which was deducted as an expense from the business income. *Sampson* v. *Sampson*, 62 Mass. App. Ct. 366, 375 (2004).

This is precisely what both parties' experts have done here.

In valuing the wife's medical practice, the husband's expert applied both the discounted future earnings method and the capitalized excess earnings method as a reasonableness check. Under both methods, he deducted a reasonable salary expense for the wife. The wife's experts also relied on the discounted future earnings method, disagreed with the husband's expert about several particular mathematical calculations and about the value of the practice, and likewise deducted a reasonable salary expense for the wife. With the separate bases for the alimony award and the property division clearly acknowledged before the court by both parties, we find no double dipping here.

Additionally, the wife contends that the judge erred in failing to consider potential tax consequences of the husband's capital losses in the division of property. The wife did not initially propose to treat the husband's substantial investment losses as an asset of the marital estate in the distribution. She raised the issue only after the master released his findings of fact, to which she objected, arguing that the carry-forward value of these losses could be used to offset the husband's capital gains tax burden on future successful investments and should therefore be valued as a marital asset. The judge remanded the question of the allocation of capital losses to the master for additional findings.

The master made supplemental findings, which the judge subsequently adopted. Citing *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 866 (1989), the master noted that the wife had failed to introduce any evidence on the value of the potential tax consequences of the husband's investment losses. The master further found that any concomitant downward adjustment in the husband's portion of the marital estate arising out of the requested reconsideration of the value of the potential tax consequences would be inequitable. The master and the judge agreed that the previously defined division of the marital estate was equitable and proper under G. L. c. 208, 34. To preserve this division, any reevaluation of the potential value of the loss carry-forward "may well necessitate a proportionate increase in the amount of distribution to be paid by the [wife] to the [husband]." Allowing the husband to retain the potential tax losses was also consistent with the judge's recognition of the

husband's role as investor of the family funds. In these circumstances, we discern no error in the master's or judge's consideration of the potential tax consequences or in the judge's denial of the motion for reconsideration.[7] Cf. *D.L.* v. *G.L.*, 61 Mass. App. Ct. 488, 511 (2004).

2. *The alimony award.* The husband argues that the judge erred in ordering the wife, whose self-employment income averaged $266,000 per year, to pay only $600 per week alimony to the husband, who currently earns $360 per week. The husband argues that the court's order for alimony of $600 per week (which is taxable to him), when coupled with his income of $360 per week ($288 after taxes), is insufficient to allow him to meet his baseline needs or to approximate the standard of living he enjoyed during the marriage. He also objects to the judge's termination of his health insurance benefit after two years.[8] We conclude that a remand is required to resolve the alimony and health insurance allocation questions because there are too many gaps in the master's and judge's fact finding and reasoning regarding the amount of alimony and the duration of alimony and payment for health insurance.

The master concluded that the husband "requires alimony for a limited period to permit him to resume a career commensurate with his education and training." The master therefore recommended, as we have indicated, an award of $1,000 per week for one year and $500 per week for the following year. See note 5, *supra*. In so concluding, he found the husband has "no future in the nuclear power industry," noting that the lack of new construction in the nuclear energy field, the husband's eight-year absence from that field, and the anticipated requirement of

[7] The wife's final argument that the § 34 distribution disproportionately and inequitably allocated liquid assets to the husband does not rise to the level of appellate argument. Mass.R.App.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We also note in passing that the judge stated in his order on the motion for reconsideration that it was the "[wife] who initially proposed the division as ordered."

[8] In response to the husband's argument that his alimony award should have been greater, the wife argues that the amount set by the court was reasonable. In her cross appeal, the wife summarily argues that the husband should not have been awarded *any* alimony. We reject the wife's contention that the husband was not entitled to any alimony at the time that the judgment was originally entered.

passing psychological profile testing made it unlikely that the husband could be employed once again as a nuclear engineer. The master nonetheless found that the husband is presently "under-employed" and that by his training and education he is capable of earning more than ten dollars per hour and, eventually, of supporting himself.

In regard to the amount, the judge "slightly revised" the master's figure to $600 per week for two years. His analysis was as follows: "Based on the section 34 findings and the relative financial status of the parties (including as to need and ability to pay), the $600 weekly amount is sufficient under the totality of the circumstances."

On the question of limited duration alimony, the judge stated:

> "Is alimony of a limited duration proper in this case? The husband is fifty-four (54) years of age, clearly an age at which it is more difficult to reenter the job market. However, the husband is highly educated (albeit a nuclear engineer who has been out of his field for approximately nine years), which would greatly aid him in obtaining new productive employment. He also has developed knowledge and skills in the investment arena as an amateur, those skills being helpful to potential new work. He has shown entrepreneurial motivation by starting a jewelry business; that business failed but one such failure does not mean that another effort cannot be successful. He is currently employed at a tile store for $10.00 per hour. The Master's subsidiary findings demonstrate that he can improve his employment status. That being the case, limited duration alimony is appropriate for the two year period recommended by the Master."

"An award of alimony is improper absent a finding of financial need on the part of the recipient spouse." *Heins* v. *Ledis*, 422 Mass. at 484. The judge found the husband temporarily underemployed and dependent upon the wife for support. The judge did not find that the husband had deliberately avoided more lucrative employment. How the judge arrived at the $600 per week figure is not clear. The husband's financial statement, in which the husband claimed total weekly expenses of $1,591.15, was included in the record, but neither the master's nor the

judge's findings expressly address those claimed needs. Without the benefit of the judge's fact finding regarding the husband's reasonable needs, we must speculate to discern the basis for the $600 figure.

The husband also asserts that while his wife's income and station will remain relatively high after the award, the judge's order will result in the husband's income dropping precipitously and will not provide the husband with the standard of living he enjoyed during the marriage. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985) (a party's need for alimony is measured by the "station" of the parties, i.e., "by what is required to maintain a standard of living comparable to the one enjoyed during the marriage"). Although "[a] person does not have an absolute right to live a lifestyle to which he or she has been accustomed in a marriage to the detriment of the provider spouse," *Heins*, 422 Mass. at 484, "[a]bsent good reason, in a long term marriage, there is no justification for the life-style of one spouse to go down while the other remains high." *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 611 (1990). Whether the judge considered this marriage a long-term partnership or significantly atypical due to the separateness of the parties' lives is not clearly explained. Compare *Redding* v. *Redding*, 398 Mass. at 108; *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. at 861. The judge's reasoning regarding the parties' respective stations after the divorce is also not transparent.

The basis for the two-year duration of the alimony and health care payments is not articulated.[9] "Typically, alimony awards of limited duration are intended to be 'rehabilitative.' " *Ross* v.

---

[9]General Laws c. 208, § 34, as appearing in St. 1989, c. 287, § 59, provides: "When the court makes an order for alimony on behalf of a spouse, said court shall determine whether the obligor under such order has health insurance or other health coverage available to him [or her] through an employer . . . or has health insurance or other health coverage available to him at reasonable cost that may be extended to cover the spouse for whom support is ordered. When said court has determined that the obligor has such insurance or coverage available . . . said court shall include in the support order a requirement that the obligor do one of the following: exercise the option of additional coverage in favor of the spouse, obtain coverage for the spouse, or reimburse the spouse for the cost of health insurance. In no event shall the order for alimony be reduced as a result of the obligor's cost for health insurance coverage for the spouse."

*Ross*, 50 Mass. App. Ct. 77, 80 (2000). The purpose of such awards is "to protect, for a limited time, a spouse whose earning capacity has suffered . . . while that spouse prepares to reenter the work force." *Moriarty* v. *Stone*, 41 Mass. App. Ct. at 158, quoting from *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 621-622 (1987). See also *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. at 867 (award of rehabilitative alimony to "knowledgeable, experienced businesswoman" appropriate since she "may take some time" "[t]o reach the level of earnings she had achieved" while employed at her husband's business).

Alimony of limited duration, however, "is viewed with some circumspection in Massachusetts." *Bak* v. *Bak*, 24 Mass. App. Ct. at 622.[10] "We have admonished that 'an arbitrary limitation on the duration of an alimony obligation to a spouse whose needs are current and predictable is unwarranted when based on an assumption of future events, the occurrence of which is uncertain or unpredictable.' " *Sampson* v. *Sampson*, 62 Mass. App. Ct. 366, 371 (2004), quoting from *Katz* v. *Katz*, 55 Mass. App. Ct. 472, 482-483 (2002).[11] We have also emphasized that "[b]efore awarding rehabilitative alimony, the recipient spouse's realistic prospects for self-sufficiency must be 'considered with care.' " *Ross* v. *Ross*, 50 Mass. App. Ct. at 80, quoting from *Bak* v. *Bak*, 24 Mass. App. Ct. 622 n.14. See also *Mailer* v. *Mailer*, 390 Mass. 371, 375 (1983) (award of rehabilitative alimony appropriate where the judge properly weighed the statutory factors against detailed findings of fact).

The elimination of the $600 per week in alimony and of the payment for health insurance presents a significant loss of income and support to the husband. According to the wife, it costs her over $5,000 annually to provide health care coverage for the husband. It will undoubtedly cost the husband much

---

[10]See generally Kindregan & Inker, Family Law & Practice § 38.11, at 649 (3d ed. 2002) ("While the Massachusetts courts have not entirely rejected the application of rehabilitative alimony, neither have they demonstrated any great enthusiasm for it").

[11]See also *Heins* v. *Ledis*, 422 Mass. at 485 n.4 (rehabilitative alimony appropriate when it is "relatively certain that financial support is needed only for a temporary period"); *D.L.* v. *G.L.*, 61 Mass. App. Ct. at 510 ("simply uncertain at this juncture" that the wife, a homemaker with no professional trade, would earn sufficient future income from employment to render alimony unnecessary).

more than that amount if he proceeds along the entrepreneurial route, which is one of the options the judge appears to suggest. If the judge's prediction of gainful employment or entrepreneurship does not come to pass, the husband's income would drop well below the baseline needs he identified on his financial statement even if his interest income is considered.[12] Whether the judge considered this outcome acceptable, because the husband could have drawn on principal, is not addressed.

This is also not a case where the dependent spouse was found to be deliberately underemployed, or to have turned down more lucrative work, or to be in the process of finishing an educational program, so that the reasons for the limited duration alimony can be readily gleaned from the fact finding. Compare *Heins* v. *Ledis*, 422 Mass. at 485 (dependent spouse had a teaching job waiting for her); *Bak* v. *Bak*, 24 Mass. App. Ct. at 621 (dependent spouse within a few credits of earning an undergraduate degree). The husband also has mental health problems that have become less severe since his move to Houston but have not disappeared. The master found that the husband currently requires medical insurance and ongoing treatment for depression and anxiety. The judge does not, however, expressly address the mental health issues in his discussion of limited duration alimony. In addition, the husband was fifty-four years old at the time of trial and had not been employed in a professional capacity since 1995. All of these factors appear to create at least some uncertainty. Why the husband's education, employment history, and investment experiences would nonetheless sufficiently ensure the opportunities the judge projected is not obvious from the decision. Finally, and perhaps most important, how the judge and master settled on two years of alimony, as opposed to a greater or lesser number of years, is not explained at all in the findings. See *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 17 (1977) ("the rationale . . . does not appear either explicitly or by clear implication").

In sum, the gaps in the judge's fact finding and analysis require a remand to resolve the questions concerning alimony and payment for health insurance coverage raised in this appeal.

---

[12]In her brief, the wife estimates the husband's interest income to be approximately $200 per week.

*Conclusion.* So much of the judgment as pertains to alimony and health insurance is vacated, and the matter is remanded to the Probate and Family Court for further explication of the rationale underlying the orders pertaining thereto (including the durational limitations on the awards). Upon remand, the judge may decide to revise the judgment in these respects. In addition, in view of the length of time that has transpired since the trial, the judge may choose to consider taking additional evidence as to the parties' current circumstances.[13] In all other respects, the judgment is affirmed. Pending final disposition, the judge may make such temporary orders for the payment of alimony and health insurance as he may deem appropriate.

*So ordered.*

---

[13]Based on supplemental filings, we have been made aware that the husband is intending to file for a modification of the original award.