NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1252

WESLEY A. NAGY

vs.

META ELIZABETH NAGY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The parties were divorced in 2022 after a trial in the Probate and Family Court. The husband appealed from the divorce judgment, as amended, and a panel of this court vacated a portion of the amended judgment and remanded the case to the judge for additional findings on a limited issue relating to the valuation of the parties' real estate. See Nagy v. Nagy, 103 Mass. App. Ct. 1120 (2024) (Nagy I). Considering the husband's appeal from the updated judgment of divorce after remand, we discern neither error nor an abuse of the judge's discretion in the judge's award of the increased value of the real estate to the wife. Because the updated judgment was neither plainly

wrong nor excessive, we affirm it.  See Zaleski v. Zaleski, 469 Mass. 230, 245 (2014).

Background.  As relevant to this appeal, at the time of the divorce, the parties owned four pieces of real estate on Martha's Vineyard.  After trial, the judge awarded three of the four properties to the wife and the remaining one to the husband.  In her calculation of the value of the marital estate, the judge valued the parties' real estate as of the date of the parties' separation in 2017.  To effect an "approximately equal division . . . of the marital estate," the judge ordered the wife to pay the husband $297,397.77 (equalizing payment).[1]

As we have noted, the husband appealed from the divorce judgment, as amended, that entered after the trial.  Although the panel otherwise affirmed, it vacated so much of that judgment as established 2017 as the year of valuation for the parties' real estate, then remanded the matter "on the limited issue of whether and, if so, to what degree, the increase in fair market value of the real estate between the date of separation and the date of trial is due solely to the wife's

---

[1] This amount accounted for division of the total equity in the properties as they were valued at the time of the parties' separation in 2017, advances on the marital estate, shared expenses incurred as part of the divorce litigation, and the value of other retained property.

2

postseparation efforts." Nagy I, 103 Mass. App. Ct. 1120. The panel ordered,

> "If, on remand, the judge determines that all or some of the increase is attributable to market forces, then the judge should consider the relationship between the amount of increase due to the market and that due solely to the wife's efforts. If some portion of the increase is due to the market, then the judge should consider whether, and to what degree, to award the husband a portion of the market-based increase."

Id.

On remand, the judge found that market forces were the sole reason for the $678,026 increase in the collective value of the parties' real estate but that without the wife's financial and nonfinancial contributions to maintenance of the properties, the increase would not have been possible. By contrast, the judge found that after the parties' separation in 2017, the "[h]usband stopped any, but very limited contribution to the preservation or appreciation in value of the real property." Moreover, the judge found that the "[h]usband's actions on more than one occasion . . . not only fail[ed] to add to the value of the real property but negatively impacted the ability of the [p]arties to rent the properties."[2] The judge concluded that the husband was

---

[2] The judge gave specific examples of the husband's detrimental conduct, including his failure to contribute to the mortgage or taxes on the properties, despite residing in them rent free; his accumulation of storage containers, vehicles of varying sorts, "a huge amount of large doors and windows," and other detritus on the properties; and his delays or failure to remove those items when asked to do so. The judge also noted

not entitled to any portion of the market-based increase in the properties' value, "[g]iven each [p]arty's conduct following separation as well as their respective contribution to the preservation and appreciation in value of the marital estate." The judge made no other changes to the original division of the parties' real estate and did not change the amount of the equalizing payment. "Using the increased value of the real property combined with all other assets which make up the total marital estate," the judge found that the "[w]ife received 54.44% and [the] [h]usband received 45.56%." "[W]ith due consideration of all of the other G. L. c. 208, § 34[,] factors already considered in the original trial and resulting divorce judgment," the judge found the asset division "to be equitable with no additional amounts being paid to either [p]arty."[3] An updated judgment of divorce after remand entered and the husband appealed.

---

the husband's involvement with the police and with renters on one of the properties, which impeded the wife's ability to rent it. The judge contrasted this information with findings about the wife's payment of the "mortgage, taxes, insurance, utilities, maintenance costs and repair costs for all the properties"; her role in physically maintaining and repairing the properties; and her initiation of and payment of legal fees for two summary process actions stemming from the properties' rentals.

[3] The judge explicitly struck from her earlier findings any reference to an "equal" division of the marital estate.

Discussion. 1. Standard of review. Where, as here, a divorcing spouse challenges the judge's division of marital property, "[w]e review the judge's findings to determine whether she considered all the relevant factors under G. L. c. 208, § 34, and whether she relied on any irrelevant factors," Zaleski, 469 Mass. at 245, then "determine whether the reasons for the judge's conclusions are 'apparent in [her] findings and rulings.'" Adams v. Adams, 459 Mass. 361, 371 (2011), S.C., 466 Mass. 1015 (2013), quoting Redding v. Redding, 398 Mass. 102, 108 (1986). "The ultimate goal of G. L. c. 208, § 34, is an equitable, rather than an equal, division of property" (quotations omitted). Connor v. Benedict, 481 Mass. 567, 580 (2019), quoting Adlakha v. Adlakha, 65 Mass. App. Ct. 860, 864 (2006). "We will not reverse a judgment with respect to property division unless it is plainly wrong and excessive" (quotation and citation omitted). Zaleski, supra. See Rice v. Rice, 372 Mass. 398, 401 (1977) (judge has broad discretion to equitably divide marital property).

2. Judge's treatment of parties' periods of disability from work. In the amended findings the judge made after trial (trial findings), she noted that both the wife and the husband, at different times, had medical problems or injuries that temporarily prevented them from contributing financially and otherwise to the marriage. Specifically, the judge found that

5

the wife was disabled from work for a ten-year period beginning in 2000.  Although the judge found that during that time, the husband cared for the wife and was primarily responsible for essentially all household duties, including moving the parties from California to Martha's Vineyard in 2004, the judge also found that beginning in 2004, the wife began receiving disability benefits, which "contributed significantly" to the parties' income through the date of the trial.  The judge found that the husband suffered "multiple medical issues during the marriage, particularly in recent years," including two eye surgeries that left him temporarily unable to work in construction, an injury to his finger that restricted his ability to work,[4] and a painful condition affecting his hands that interfered with some activities, including "play[ing] music to his full capacity."  In her further findings after remand (postremand findings), the judge found that after the parties' separation in March 2017, the husband stopped contributing to the preservation or appreciation in the properties' value, and that "on more than one occasion," he "not only fail[ed] to add

---

[4] The judge found that at the time of the trial, the husband had been employed as a church music director since 2005 and played in a professional band at approximately twenty events per year.  The husband also worked in construction until 2020, when he stopped due to his finger injury.

6

to the value of the real property but negatively impacted the ability of the [p]arties to rent the properties."

To the extent that, taken together, the judge's findings reflect her determination "that the husband may simply have been unwilling to contribute to the preservation of [the properties]," the conclusion is not clearly erroneous. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005) ("On appeal, we are bound by a judge's findings of fact that are supported by the evidence, including all inferences that may reasonably be drawn from the evidence"). The judge's findings reflect that the husband's inability to work was only temporary, as in the case of the recovery period from his two retinal surgeries and the repair of the injury to his finger; limited in scope, as for the condition affecting his hands and limiting his ability to do certain activities at full capacity; or both.[5] The trial findings show that the husband was employed and earning income in each year from 2017 to 2021, and in that same interval, he made discretionary expenditures on travel and entertainment, as well as did work on his girlfriend's property.[6] The judge's conclusion that the husband

---

[5] Indeed, the husband does not challenge the judge's finding that he has been continuously employed as a music director since 2005.

[6] The husband does not challenge these findings as clearly erroneous. Cf. Nagy I, 103 Mass. App. Ct. 1120 ("The husband

7

could have contributed to the upkeep of the properties, but did not do so, was a reasonable inference from the evidence. See id.

Nor are we persuaded that the judge improperly penalized the husband for his failure to contribute financially or otherwise to the upkeep of the properties during the parties' separation by failing to take into account the wife's ten-year period of incapacity for work and household activities, from 2000 to 2010. Contrary to the husband's argument, the judge did credit the husband for his support of the wife during the time she was disabled, but she also noted that despite the wife's inability to work, the wife "contributed significantly upon receiving her disability benefits." The judge's findings also reflect her determination that after the wife returned to work, she resumed shared responsibility for marital obligations, including maintaining the parties' properties. In sum, although both parties suffered conditions at different times that reduced their ability to contribute to the creation and preservation of the marital estate, the judge's findings support the conclusion that the wife opted to contribute what she could, given her limitations, while the husband did not. We discern no abuse of

_____

has not argued, let alone shown, that the judge's findings concerning his health, employment, and employability were clearly erroneous").

8

discretion in the judge's "disparate" treatment of this aspect of the parties' conduct.

3.  Rental income and depreciation on real estate.
Contrary to the husband's contentions, the judge did not erroneously fail to consider the wife's receipt of rental income from the parties' properties in 2020 and 2021.  Rather, in her postremand findings, the judge noted that the "[w]ife received rental income from the properties."

As to depreciation, the fact that the postremand findings did not include explicit reference to any properties' depreciation in 2020 and 2021 does not persuade us that she overlooked it or failed to recognize its significance.  The judge's trial findings demonstrate her proper application of depreciation for the years 2017 through 2019, and we have no reason to believe that the judge failed to similarly account for depreciation when considering the ongoing rental of the properties.

Even if we were to conclude that the judge failed to account for the properties' depreciation during the last two years of the marriage, we would not reverse the judgment.  The judge's decision not to allocate any of the increase in the properties' value did not turn on the precise amounts the wife received or expended on the properties, but on the judge's determination that the wife alone made positive contributions

9

toward their maintenance and operation.  See Williams v. Massa, 431 Mass. 619, 632 (2000), quoting Moriarty v. Stone, 41 Mass. App. Ct. 151, 157 (1996) ("The parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate").  The husband has not shown that the judge's failure to address depreciation explicitly in her explanation of the allocation of the increase in the properties' value rendered the resulting judgment plainly wrong or excessive, and we see no reason to disturb the judgment on that basis.  See Zaleski, 469 Mass. at 245.

4.  Investment with wife's friend.  The judge did not "ignore" the fact that the parties lost money when, sometime before 2004, they invested with the wife's friend, who later defrauded them.  The judge addressed this situation in her trial findings.  Given the timing of the investment and the judge's unchallenged finding that -- based on the husband's testimony -- "both parties agreed to invest this money," the judge permissibly declined to treat the ill-advised investment as marital property dissipated by the wife.  See Kittredge v. Kittredge, 441 Mass. 28, 42-43 (2004) ("one of the features that makes an expenditure a dissipation of marital assets is its timing, i.e., that it is incurred at a time when the marriage is breaking up, thus making it apparent that the expenditure will reduce the assets available to the other spouse").  Cf. Caveney

10

v. <u>Caveney</u>, 81 Mass. App. Ct. 102, 113-114 (2012) (no error in judge's treatment of husband's withdrawal of funds from individual retirement arrangement account as dissipation where husband acted without wife's permission and for purpose of maintaining high standard of living for himself to detriment of wife).

<u>Updated judgment of divorce
after remand affirmed</u>.

By the Court (Henry, Hand & Brennan, JJ.[7]),

*Paul Little*

Clerk

Entered:  November 21, 2025.

---

[7] The panelists are listed in order of seniority.

11